[S. F. No. 5384.  In Bank.—May 31, 1910.]

FREMONT OLDER, Petitioner, v. SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF KERN, and Hon. C. W. Norton, Acting Judge Thereof, Respondents.

CRIMINAL LIBEL—CHANGE OF VENUE—CONSTRUCTION OF CONSTITUTION—"GOOD CAUSE"—PENAL CODE.—Under section 9 of article I of the constitution regulating criminal prosecutions for libels by the press, and providing that "Indictments found, or information laid, for publications in newspapers shall be tried in the county where such newspapers have their publication office, or in the county where the party alleged to be libeled resided at the time of the alleged publication, unless the place of trial shall be changed for good cause," the words "for good cause" are not to be construed as an operative law, or as conferring an enlarged discretion upon the court, and where the charge is properly brought at the place of residence of the complainant, the only "good cause" for change of venue to the place of publication of the paper is that set forth in section 1033 of the Penal Code.

ID.—INSUFFICIENT SHOWING FOR CHANGE OF VENUE.—Where there was no attempt to show that "a fair and impartial trial could not be had" in the county of the complainant's residence, as provided in section 1033 of the Penal Code, but the sole ground urged was "that the convenience of witnesses and the ends of justice will be promoted by the change, and that the place of trial should be changed for good cause," the judge presiding at the place of venue properly held that it had no jurisdiction to consider any other ground for a change of venue than that set forth in section 1033 of the Penal Code.

ID.—PRESS NOT FAVORED BY CONSTITUTION IN CRIMINAL LIBEL CASES.—The contention that publishers, editors, and contributors to newspapers are singled out by section 9 of article I of the constitution

for special favor and privilege, by being given the right to a change of venue for any "good cause" which may appeal to the discretion of the judge, is not supported either by the language of the constitution or the reported debates of the constitutional convention.

ID.—INTENTION OF FRAMERS OF CONSTITUTION—EVILS AND REFORMS TO BE CONSIDERED—COMMON-SENSE CONSTRUCTION.—DEBATES.—In considering the intention of the framers of the constitution with reference to change of places of trial in criminal libels published in newspapers, the evils which were to be remedied, the reforms to be accomplished, and all other matters which would assist in discovering the purpose of the members of the constitutional convention must be investigated. The provision adopted by them must receive a practical, common-sense construction to be considered with reference to the prior state of the law and the mischief to be remedied by the change; and in aid of this canon of interpretation, the debates which occurred when the provision in question was adopted in the convention must be read to ascertain from the statements of the constitution makers themselves, if possible, their purposes and intentions.

ID.—PRIOR EVIL TO BE REMEDIED — DANGER OF PROSECUTION IN ANY COUNTY WHERE LIBEL WAS CIRCULATED.—The prior evil especially intended to be remedied was the danger of prosecution in any county where the libel was circulated, with power to select any judge in the state. This evil was remedied by limiting the venue to two counties only, that of the place of publication and that of the residence of the complainant.

ID.—RESULT OF DEBATES — SYNONYM FOR "GOOD CAUSE" — SHORTENED FORM.—As the result of the debates, without any word to indicate the contrary, the words for "good cause" were without remark or comment evidently substituted as a shortened form for the words proposed,—"subject only to the change of venue, as in other prosecutions,"—nothing being said to indicate a different intent by such substituted words.

ID.—PENAL CODE PROVISION CONTINUED IN FORCE BY CONSTITUTION—LEGISLATIVE MEASURE OF "GOOD CAUSE."—Under section 1 of article XXII of the constitution, it is expressly provided that all laws in force at the adoption of the constitution, not inconsistent therewith, shall remain in full force and effect until altered or repealed by the legislature. By this provision section 1033 of the Penal Code was continued, and must be considered as the legislative measure of "good cause."

ID.—CONSTITUTIONAL PROVISION AS TO "GOOD CAUSE" NOT SELF-EXECUTING.—The constitutional provision as to "good cause" is not self-executing, since it merely indicates a principle without laying down any rules by means of which that principle may be given the force of law without appropriate legislation to carry it into effect. If the members of the constitutional convention had intended to take the change of venue in criminal libel cases entirely away from the legis-

lature, they should have included in the constitution all the steps necessary to present the matter to the court and to give effect to its order.

APPLICATION for Writ of Mandate to the Superior Court of Kern County. C. W. Norton, Judge presiding.

The facts are stated in the opinion of the court.

Hiram Johnson, Sullivan & Sullivan, and Theo. J. Roche, for Petitioner.

J. W. P. Laird, Rowen Irvin, and John E. Bennett, for Respondents.

MELVIN, J.—The petitioner, Older, asked the district court of appeal of the third appellate district to issue a writ of mandate compelling respondents to entertain and determine the right of said petitioner to a change of venue of an action for criminal libel pending in Kern County. The motion for change of venue was based upon grounds other than that mentioned in section 1033 of the Penal Code. After deciding preliminarily that, in spite of the fact that Kern County is in the second appellate district, the district court of appeal of the third district had jurisdiction to issue the writ, that court gave an alternative writ and after a full hearing granted a peremptory writ directing respondents to proceed with the hearing and decision of the motion for change of venue upon its merits. Upon consideration of a petition for rehearing filed by respondents and answered by petitioner, this court granted a rehearing of the matter.

In the opinion rendered by the district court of appeal at the time of issuing the alternative writ, that court explained that the reason for taking up a matter pertaining to a county within another district was one of convenience to the attorneys for petitioner. This language occurs in the opinion: "Counsel for petitioner declare, and we must assume that all members of the bar at all times act in good faith with the court, that it would be inconvenient and in fact impracticable to present this application to the second appellate district court; that they were limited in the time within which to prepare the elaborate petition which has been filed here, and that the actual

trial of the petitioner is set for the eleventh day of May, 1909, —one day from that on which this application was presented.

"The constitution (sec. 4, art. VI) confers upon the district courts of appeal the jurisdiction of hearing writs of mandate, and does not confine the issuance of such writs by such courts within their territorial jurisdictions. But, as a matter of comity, as we have declared, such writs should invariably be applied for to the court of the district in which the cause for the writ arises, unless there are shown, as there are here, special circumstances which justify the issuance of the writ by a court of another district."

Counsel for respondents are of the opinion that the district court of appeal for the third district is in error in the conclusion that it has jurisdiction to issue writs of mandate to any part of the state. Section 4 of article VI of the constitution provides that: "The said court shall also have power to issue writs of *mandamus, certiorari,* prohibition, and *habeas corpus,* and all other writs necessary or proper to the complete exercise of their appellate jurisdiction." The jurisdiction of the district court of appeal, according to respondents, is either territorial or conferred—territorial in matters appealable to it from within the district in which it exists, and conferred in causes assigned to it by the supreme court. In the proceeding before us the district court of appeal of the third district has issued mandate with reference to a motion in a case directly appealable to the district court of another district. Hence, according to the contention of respondents, the issuance of said writ was not necessary to the complete exercise of the appellate jurisdiction of that court. But the language of section 4 of article VI of the constitution is very general and it may be urged with much force that the words "necessary or proper to the complete exercise of their appellate jurisdiction" modify not the words *"mandamus, certiorari,* prohibition or *habeas corpus"* but refer exclusively to "other writs." This interpretation would give a district court of appeal jurisdiction to issue to any part of the state either of the four writs mentioned by name, but would limit its power as to those designated as "other writs." It is not necessary, however, to determine the exact meaning of this language, in view of the conclusion reached by us with reference to the constitutional question discussed by the district court of appeal concerning change of

venue in cases of criminal libel. For the purposes of this case we may assume that the district court of appeal of the third appellate district had jurisdiction to issue the writ and that under the facts mentioned *mandamus* was the proper remedy. But we do not find it necessary to decide these matters because we are unable to agree with the learned district court of appeal in the conclusion that section 9 of article I of the constitution makes available, upon a motion for change of venue in a certain class of actions for criminal libel, grounds other than those mentioned in section 1033 of the Penal Code.

Certain informations are pending in the superior court of Kern County. In these informations one Fremont Older, editor, and R. A. Crothers, proprietor and publisher of a newspaper printed in San Francisco, are jointly charged with criminal libel. There is no question raised with reference to the county in which these actions were commenced, but the said Older moved for a change of the place of trial upon the grounds that "the convenience of witnesses and the ends of justice will be promoted by the change and that the place of trial should be changed for good cause." There was no motion on the ground mentioned in section 1033 of the Penal Code "that a fair and impartial trial cannot be had in the county." The petition of said Older alleges and the answer of the judge presiding in the superior court of Kern County at the hearing of the motion for change of venue admits that the judge announced, after argument and consideration of the matter, that he intended to deny the motion for the sole reason that he had no jurisdiction to grant it upon the grounds urged in said petition, nor for any reason other than that specified in section 1033 of the Penal Code. The question for our determination, therefore, is this: Has the defendant in an action for criminal libel alleged to have been committed by a publication in a newspaper, the right to a transfer of his case from a county in which it is properly pending by reason of any "good cause" for such removal other than that provided in section 1033 of the Penal Code? In other words, is section 9 of article I of the constitution self-executing without any legislative definition of the words "good cause"? The section in question is as follows:—

"Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that

right; and no law shall be passed to restrain or abridge the
liberty of speech or of the press. In all criminal prosecutions
for libels, the truth may be given in evidence to the jury; and
if it shall appear to the jury that the matter charged as libelous
is true, and was published with good motives and for justifiable
ends, the party shall be acquitted; and the jury shall have the
right to determine the law and the fact. Indictments found,
or information laid, for publication in newspapers, shall be
tried in the county where such newspapers have their publica-
tion office, or in the county where the party alleged to be libeled
resided at the time of the alleged publication, unless the place
of trial shall be changed for good cause."

Admittedly in all other prosecutions defendants desiring
change of venue are limited to the rule of section 1033 of the
Penal Code, which is as follows: "A criminal action may be
removed from the court in which it is pending on application
of the defendant, on the ground that a fair and impartial trial
cannot be had in the county."

Petitioner's counsel, however, contend that publishers and
editors of and contributors to newspapers are singled out by
the constitution for special favor and privilege by being given
the right to change of venue for any "good cause" which may
appeal to the discretion of the judge. Not only is this a
startling contention, but in our opinion there is nothing to
support it, either in the language of the constitution or the
reported debates of the constitutional convention. The rule of
the constitution that there might be a change of venue for
"good cause" in these cases was adopted after a spirited debate
in which the conclusion was reached that the liberty of the
press, so important in all free governments, would be better
protected by limiting these prosecutions to the county in which
the newspaper was printed or the county of the residence of
the person charging the libel. It would seem monstrous and
grotesque that a man indicted for murdering his neighbor or
for stealing money would be limited to local prejudice as a
reason for the removal of his case to another county for trial,
and that one charged with the assassination of reputation or
the filching of a fellow citizen's good name should have a wider
privilege in that regard, and it would be still more wonderful
that a constitutional convention should adopt such a rule and
give it place in the organic law to be proposed for adoption by

the people without one syllable being spoken indicative of such an. intention.

In considering the intention of the framers of the constitution with reference to change of places of trial in cases where prosecutions are pending for criminal libels published in newspapers, we must investigate the evils which were to be remedied, the reforms to be accomplished and all other matters which assist in discovering the purpose of the members of the constitutional convention. As was well said in the opinion in the case of the *People* v. *Stephens,* 62 Cal. 233, all the provisions of the constitution "must receive a practical common-sense construction. They must be considered with reference to° the prior state of the law, and with reference to the mischief intended to be remedied by the change." In aid of this canon of interpretation, we may also examine the debates which occurred at the time of the adoption of the part of the constitution under analysis and learn from the statements of the constitution-makers themselves, if possible, their purposes and intentions. (*Springfield* v. *Edwards,* 84 Ill. 626.) Let us, then, see what abuse the framers of the constitution of 1879 wished to eradicate. There can be no doubt that they desired to relieve the publishers of newspapers from the danger of prosecution in any county in which any alleged libel might be promulgated, no matter how far from the principal place of business of the newspaper such county might be. Under the old constitution the publisher of a newspaper might be prosecuted in any county in which the libel was circulated. Desiring to correct this evil Mr. Ayres proposed an amendment to section 9 of article I. That section in the constitution of 1849 was as follows:—

"Sec. 9. Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions on indictments, for libels, the truth may be given in evidence to the jury; and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives and for justifiable ends, the party shall be acquitted; and the jury shall have the right to determine the law and the fact." At page 318, volume I of the Debates and Proceedings of the Constitutional Convention we find the opening

of the very interesting discussion which culminated in the adoption of the section which we are now examining. Mr. Ayres's proposed amendment was as follows: "Add to the section the following: Trial for libel against publishers of newspapers shall be held in the county where the newspapers and periodicals are published, subject only to the change of venue as in other prosecutions." Obviously there was no intention here to put these cases of criminal libel in a class by themselves with reference to change of venue. It was the intention of Mr. Ayres to place defendants charged with criminal libel published in newspapers under the provisions of section 1033 of the Penal Code which was then and for years had been in existence in substantially the form in which it now appears. His sole purpose was the removal of the privilege of prosecuting a publisher or editor at a selected location far distant from his place of business. This amendment was lost and then the convention entered upon the discussion of an amendment which resulted in the substitution of the words "shall have a right to return a general verdict as in other cases" for the words "shall have the right to determine the law and fact."

Subsequently Mr. Campbell proposed this amendment: "Indictments or informations for publications in newspapers shall be tried in the county where such newspapers have their publication office, unless place of trial shall be changed for good cause." (Debates and Proceedings of the Constitutional Convention, Vol. 1, p. 341.) It will be seen that this amendment was almost identical with the one theretofore proposed by Mr. Ayres except that the former applied only to *publishers* of newspapers, while the latter included within its purview indictments for *publications* in newspapers and in the latter the phrase "unless the place of trial shall be changed for good cause" was used in lieu of the words "subject only to the change of venue as in other prosecutions." So nearly alike were these two amendments that several members made objections to considering Mr. Campbell's measure because, according to their recollection, it had been voted down. In the discussion which followed Mr. Campbell said nothing about the change in the phraseology whereby we could draw the inference that he wished change of venue in this sort of criminal libel cases to depend upon the discretion of the court as to what was "good cause." Indeed, all of the debaters, including Mr. Campbell, seemed to regard

the amendment of Mr. Ayres and that of Mr. Campbell as practically the same, differing only in the phraseology employed by the respective draughtsmen and small details such as the exclusion of the word "periodicals" from Mr. Campbell's proposed amendment. Mr. Campbell speaking to his proposed amendment said in part: "The publisher may be brought to answer in Siskiyou, or in any part of the state in which that paper circulates, and you then have this state of things: That a man may be dragged eight hundred miles from his home to answer to a charge of misdemeanor before a selected judge, and before one whose political convictions and associations are such, or whose present associations are such, that the judge is the intimate friend of the prosecutor. The prosecutor may select any county in the state in which to bring the action, or all of the counties in the state, as has heretofore been attempted. They have their choice of all the judges in the state, and all the advantage which locality can give them. They can take the victim from one end of the state to the other, and there is no one to prevent them, no law to interfere, and you will then have what you are pleased to call the freedom of the press." After an extended debate upon the matter Mr. Shafter said: "When a man is charged with being a thief he has as much right to be vindicated at his own home as the newspaper has. I therefore move this amendment, which I think is eminently right and proper. It is to be added to amendment already presented by Judge Campbell, and I hope that gentleman will accept it, as a part of his amendment." Thereafter the following proceedings were had:—

"The Chairman: Send up the amendment.

"The secretary read:

" 'Or in the county where the party alleged to be libeled, resided at the time of the alleged publication.'

"Mr. Shafter: That will confine the trial to two places, either to the place where the paper is published, or to the place where the libeled party resided at the time of the publication.

"Mr. Campbell: I accept the amendment.

"Mr. Edgerton: Mr. Chairman, is an amendment in order?

"The Chairman: No, sir; there is already an amendment to an amendment.

"Mr. Campbell: I have accepted the amendment offered by the gentleman from Marin, Mr. Shafter.

"The Chairman: If the amendment is accepted then an amendment to the amendment will be in order. The gentleman from Sacramento will send up his amendment.

"Mr. Edgerton: I move to amend so as to read as follows: 'Indictments or informations for publications in newspapers shall be found and tried in the county where such papers have their publication office, or in the counties where the party alleged to be libeled resided at the time of the alleged publication, unless the place of trial shall be changed for good cause.'

"Mr. Van Dyke: The amendment is unnecessary.

"Mr. Edgerton: I am opposed to the whole thing but I suggest this merely.

"The Chairman: The question is on the adoption of the amendment.

"Mr. Shafter: I move to insert the words, 'indictment found or information laid.'

"Mr. McFarland: I would suggest that something be left to the legislature when it comes to arrange the details."

The entire section was then adopted as amended by the committee of the whole and afterward by the convention, except the jury was given the right to determine the law and the facts and was not limited to the power of returning a general verdict. Not one word of the debate conveys to us the idea that the members of the convention desired to put editors and publishers and writers for newspapers in a class by themselves subject to having prosecutions for criminal libel changed upon the discretion of a judge for what he might regard as "good cause," while other persons accused of libel not published in a newspaper or of any other crime and being under indictment or information therefor would be limited to the legislative enactment contained in the Penal Code, if they would seek change of venue in any given case. Indeed, the remark of Judge McFarland indicates that he at least considered some legislative action necessary to the complete operation of the constitutional enactment.

It is provided by section 1 of article XXII of the constitution: "That all laws in force at the adoption of this constitution, not inconsistent therewith, shall remain in full force and effect until altered or repealed by the legislature." By this section the rule announced in the Penal Code must be and remain in force if not inconsistent with section 9 of article I.

We can see no such inconsistency, and as that rule provides but one reason for changing the place of trial, we must regard it as the legislative measure of "good cause."

In the brief of petitioner's counsel and in the opinion of the district court of appeal, the belief is expressed that it was intended by the makers of the constitution to take entirely from the legislature the power of providing the grounds upon which an indictment or information for criminal libel arising out of the publication in a newspaper might be transferred for trial from the county in which the prosecution was instituted. As we have indicated, we can see no reason for such a rule. Why should such a special class be made of those who are charged with the most dangerous and public form of libel? Why should editors and publishers of and contributors to newspapers be freed from laws made by the legislature and be given by the constitution to the tender mercies of judicial discretion as exercised in the vague, dimly defined region of "good cause"? The constitutional provision which we are considering either bestows a right which is to be regulated and given definite operation by statute, or it takes the place of statutory enactment and becomes itself a statute which may not be repealed by the legislature. Only upon the latter theory can it be upheld as self-executing. This doctrine is well expressed by Judge Cooley as follows: "A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." (Cooley's Constitutional Limitations, p. 121.) The supreme court of Illinois has said: "Where the constitution requires the performance of an act, but provides neither officers, the means or the mode in which the act shall be performed, in such a case there is no other means of carrying such a provision into effect but by appropriate legislation. In such cases the constitution does not execute such provisions." (*Phillip* v. *Quick,* 63 Ill. 448. See, also, *Washingtonian Home* v. *Chicago,* 157 Ill. 414, [41 N. E. 893].) Applying the rule above expressed it becomes clear that the section of the constitution which we are considering is not self-executing. If the members of the constitutional convention had intended to take the subject of

change of venue in these cases entirely away from the legis-
lature, it seems most highly probable that they would have pro-
vided in the constitution all of the machinery for transferring
the case—the custody of the prisoner, the transmission of the
records, and all of those matters which are treated in sections
1033 to 1038 inclusive of the Penal Code. In other words, if
there had been an intention, for some undeclared reason, to
provide for change of venue which would exclude legislative
interference, all chance of misapprehension would have been
obviated by expressing in the constitution itself not only the
reason which would justify a change but also all of the steps
necessary to present the matter to the court and to give effect
to its order. This was not done.

No reason appears to us in the language itself of section 9
of article I, in the history of that section nor in the nature of
the actions to which it applies, which would justify the con-
clusion that it is or was intended to be self-executing.

It follows herefrom that the views expressed by the trial
judge are sound in point of law, and that the petitioner is en-
titled to a change of venue, if at all, upon no other ground
than that expressed in section 1033 of the Penal Code. Where-
fore the application for mandate is denied.

Henshaw, J., Lorigan, J., Sloss, J., Angellotti, J., and Shaw,
J., concurred.