[Sac. No. 3061. In Bank.—June 15, 1921.]

WALTER P. STORY, Respondent, v. FRIEND WILLIAM RICHARDSON, Treasurer, etc., Appellant.

[Sac. No. 3062. In Bank.—June 15, 1921.]

WALTER P. STORY, Appellant, v. FRIEND WILLIAM RICHARDSON, Treasurer, etc., Respondent.

[1] CONSTITUTIONAL LAW—CONSTRUCTION OF AMBIGUOUS PROVISION— OBJECTS AND PURPOSES.—Where terms of a constitutional provision are not entirely free from doubt, they must be interpreted as nearly as possible in consonance with the objects and purposes in contemplation at the time of their adoption.

[2] ID.—MATTERS IN AID OF INTERPRETATION.—In aid of the interpretation of terms of a constitutional provision which are not entirely free from doubt, the court may consider conditions existing prior to and at the time of the adoption of the provision, the debates in a constitutional convention and the printed arguments for and against the provision submitted to the people at the polls.

[3] TAXATION—GROSS RECEIPTS—CONSTITUTIONAL PROVISION—EXCLU-
SIVE APPLICABILITY TO PUBLIC UTILITIES.—The provision of sec-
tion 14 of article XIII of the constitution for the taxation of the
companies therein named in proportion to gross receipts is applica-
ble only to public utilities.

[4] PUBLIC UTILITIES—OFFICE BUILDING ELECTRICAL PLANT—FURNISH-
ING OF ENERGY TO ADJOINING BUILDING.—An owner of a plant de-
signed primarily and pre-eminently for supplying electrical energy
and steam to the tenants of his own building is not a public util-
ity engaged in the transmission or sale of electricity within the
meaning of section 14 of article XIII of the constitution, by
reason of the fact that he furnished electrical energy under spe-
cial contract to the occupants of an adjoining building as well
as to the tenants of his own building.

[5] ID.—PRIVATE ENTERPRISE—SPECIAL SALES—EXCLUSION FROM OPER-
ATION OF ACT. — Where an electrical plant is employed solely
in a private enterprise, sales of surplus energy to certain in-
dividuals does not bring the owner of the plant within the scope
of the definition of the term "public utility" as contained in the
Public Utilities Act.

APPEALS from a judgment of the Superior Court of
Sacramento County. Peter J. Shields, Judge. Reversed
and affirmed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and Frank L. Guerena,
Deputy Attorney-General, for Appellant in Sac. No. 3061
and for Respondent in Sac. No. 3062.

Amend & Amend for Respondent in Sac. No. 3061 and
for Appellant in Sac. No. 3062.

LENNON, J.—This action was brought for the purpose
of having an assessment declared null and void and to
recover from the treasurer of the state of California the
amount of a tax paid by plaintiff pursuant to said assess-
ment and under protest.

The plaintiff, Walter P. Story, is the owner of a twelve-
story office building in the city of Los Angeles, in the sub-
basement of which are located three 125 horse-power boilers,
pumping engines, lighting engines, vacuum-sweeper engines,
a hot-water heater, filtering machinery, house-pumps, etc.
This machinery and equipment were placed in the building

at the time of its construction for the purpose of supplying the tenants occupying the building with light, heat, hot water, elevator, and cleaning service, and have ever since been so used. During the year 1916, in addition to furnishing such service to the tenants of the building, plaintiff supplied electrical energy and steam to certain individuals, some of whom were not tenants of the Walter P Story building, but occupied property in the vicinity of that building. The terms of these sales were arranged by private contract between plaintiff and purchasers; plaintiff possessed no franchise and neither the operation of the plant nor the sales in question were regulated in any manner by any public utility commission or body. The state board of equalization levied a tax upon the said machinery and equipment in plaintiff's building equal to five and six-tenths per cent of the gross sums received from the special sales of electrical energy and steam for the year 1916, which gross returns amounted to $6,040.13 and $7,618.77, respectively. Plaintiff claims that this taxation was unauthorized and that he is entitled to recover the amount thereof. The trial court held that plaintiff was not entitled to recover the tax based upon the gross sales of electrical energy, but that the tax based upon the gross sales of steam was without authority and void. Plaintiff and defendant have each appealed from those portions of the judgment which are adverse to them.

Section 14 of article XIII of the constitution of California provides: "Taxes levied, assessed and collected as hereinafter provided upon railroads, . . . car companies . . . companies doing express business on any railroad, steamboat, vessel or stage line in this state; telegraph companies; telephone companies; companies engaged in the transmission or sale of gas or electricity; insurance companies; banks, banking associations, savings and loan societies, and trust companies; and taxes upon all franchises of every kind and nature, shall be entirely and exclusively for state purposes, and shall be levied, assessed and collected in the manner hereinafter provided. The word 'companies' as used in this section shall include persons . . . " Subdivision "a" of this section of the constitution provides that the railroads, car companies, express companies, telegraph companies, gas and electric companies previously mentioned

shall annually pay a tax upon the property used exclusively in the operation of their business in this state, the amount of which tax shall equal certain percentages of the gross receipts of said companies, and that "such taxes shall be in lieu of all other taxes and licenses, state, county, and municipal, upon the property above enumerated of such companies except as otherwise in this section provided." Defendant claims that this section of the constitution confers upon the state the power to levy upon plaintiff's property the tax assailed in the instant case. Controverting this contention, plaintiff asserts that the section permits the state to tax the property of only those companies or persons engaged in the transmission or sale of electricity operating as public utilities, and that plaintiff is not a public utility and therefore not taxable under the section.

[1] Where terms of a constitutional provision are not entirely free from doubt, they must be interpreted as nearly as possible in consonance with the objects and purposes in contemplation at the time of their adoption. [2] Accordingly, it has been held, in aid of the interpretation of such terms, that the court may consider conditions existing prior to and at the time of the adoption of the provision under consideration, the debates in a constitutional convention, and the printed arguments for and against the provision submitted to the people at the polls. (*Matter of Russell,* 163 Cal. 668, [Ann. Cas. 1914A, 152, 126 Pac. 875]; *Older* v. *Superior Court,* 157 Cal. 770, [109 Pac. 478]; *Pacific Gas & Electric Co.* v. *Industrial Acc. Com.,* 180 Cal. 497, 501, [181 Pac. 788].) The provision of the constitution here under consideration was adopted by the people of the state at the election of November, 1910, as the result of a movement to separate state and local taxation. In 1905 a commission was authorized to investigate the system of revenue and taxation in force in this state and recommend a revision thereof. (Stats. 1905, p. 390.) The commission appointed proposed an amendment to the constitution. (Report of the Commission on Revenue and Taxation of the State of California, 1906, vol. 2, Appendix to Journals of Senate and Assembly of California, Session 1907.) In 1910, after some alterations, the amendment was submitted to the people and adopted by them. The amendment as adopted was fundamentally the same as that proposed by

the commission in its report in 1906, and that report may, therefore, be considered in determining the meaning of doubtful provisions. The commissioner recommended a separation of the sources of state and county revenue and that the property of certain "public utilities" and certain "other corporations," namely, banks and insurance companies, be taxed solely for the benefit of the state. The theory of the report was that an *ad valorem* system of taxation was unsatisfactory in that it failed to distribute equally the burden of taxation, particularly in view of the fact that in certain cases, such as public utilities, banks, and insurance companies, the greatest value lay in the extent and nature of operation rather than in the intrinsic worth of separate items of property. Accordingly, a uniform scheme was proposed for the taxation of certain enumerated public utilities, including electrical companies, and that system was that the tax should equal a certain percentage of gross receipts; special methods were prescribed for the taxation of banks and insurance companies. Throughout the report electrical companies were classified and discussed as one group of "public utilities" to be taxed upon gross receipts. In the printed arguments submitted to the voters in 1910, at the time the constitutional amendment was voted upon, the "gross receipts" method of taxation was advocated solely for public utilities. [3] It is clear both from the report of the commission proposing the amendment and the arguments advanced to those voting upon the adoption of the amendment, as well as from the nature of the amendment, that the provision for taxation in proportion to gross receipts is applicable only to public utilities. In discussing the amendment, the cases have generally assumed that the tax upon gross receipts was limited to public utilities, although the precise question has never before been presented for decision. (*San Francisco* v. *Pacific Tel. & Tel. Co.*, 166 Cal. 244, 247, [135 Pac. 971]; *Pacific Gas & Electric Co.* v. *Roberts*, 168 Cal. 420, [143 Pac. 700].)

[4] Plaintiff is also correct in his contention that he is not a public utility "engaged in the transmission or sale of . . . electricity" within the meaning of said section 14 of article XIII of the state constitution. He is not engaged in the sale and distribution of electricity to the public at large or any portion thereof as such. It appears that plaintiff fur-

nished electrical energy under special contract to certain occupants of his own building and to the occupants of an enjoining building. This was the extent of his special sales of electrical energy. "The test is . . . whether the public has a legal right to the use, which cannot be gainsaid, or denied, or withdrawn, at the pleasure of the owner." (*Farmers' Market Co.* v. *Philadelphia etc. R. R. Co.,* 142 Pa. St. 580, [21 Atl. 989].) "The essential feature of a public use is that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefiniteness or unrestricted quality that gives it its public character." (*Thayer* v. *California Development Co.,* 164 Cal. 117, 127, [128 Pac. 21, 25].) There was no such general offer on the part of plaintiff. Plaintiff's plant was designed primarily and pre-eminently for supplying service to the tenants of his own building, and the special sales of electrical energy and steam were wholly subsidiary and ancillary to this main purpose. The surplus electrical energy at plaintiff's disposal was therefore so limited as to restrict the sale thereof to exceptional cases and prevent the indefinite offer of service essential to a public use.

[5] Defendant claims that, notwithstanding plaintiff's restricted operation, he comes within the term "public utility" as defined by the "Public Utilities Act" of this state. That act provides that anyone who generates or distributes electricity to the public or any portion thereof for any compensation or payment whatsoever is a public utility subject to the provisions of that act. The same act defines "public or any portion thereof" as "the public generally or any limited portion of the public including a person." (Stats. 1915, pp. 115, 117, 118.) "Even a constitutional declaration cannot transform a private enterprise or a part thereof into a public utility and thus take property for public use without condemnation and payment." (*Del Mar Water etc. Co.* v. *Eshleman,* 167 Cal. 666, 680, [140 Pac. 591, 596].) Consequently, it has been held that the definitions of public utilities contained in the Public Utilities Act must be construed as applying only to such properties as have in fact been devoted to a public use, and not as an effort to impress with a public use properties which have not been devoted thereto. (*Allen* v. *Railroad Commission,* 179 Cal. 68, 89, [8 A. L. R. 249, 175 Pac. 466].) Inasmuch as plaintiff's

property was employed solely in a private enterprise, the consummation of the special sales did not bring him within the scope of the definition contained in the act.

Since section 14, article XIII, of the constitution was designed to authorize state taxation in proportion to gross receipts only in the case of public utilities, and plaintiff is not operating as a "public utility," his property is not taxable thereunder. It follows that the tax based upon gross sales of electricity was without authority and void. It therefore becomes unnecessary to pass upon the point raised by the state treasurer in his appeal, namely, that the sales of steam were taxable as a by-product of the business in electricity and that the trial court erred in holding void the tax based upon gross receipts from sales of steam.

The trial court found that plaintiff was not furnishing the commodities of electricity and steam as a public service concern. Therefore, with the exception of the single conclusion of law to the effect that the tax based upon plaintiff's gross sales of electrical energy for the year 1916 was valid, the findings of the trial court are in accordance with the allegations of plaintiff's complaint and will support the judgment wholly in his favor. That portion of the judgment which declares that plaintiff recover nothing from defendant on account of the tax based upon the sales of electrical energy is reversed, with directions to the trial court to enter a judgment declaring the said tax void and that plaintiff recover the amount thereof. That portion of the judgment which grants plaintiff a recovery on account of the tax based upon the sales of steam is affirmed.

Sloane, J., Lawlor, J., Olney, J., Shaw, J., Angellotti, C. J., and Wilbur, J., concurred.