[No. C000367. Third Dist. July 25, 1988.]

JAIME LEGER et al., Plaintiffs and Appellants, v.
STOCKTON UNIFIED SCHOOL DISTRICT et al., Defendants and
Respondents.

1450

COUNSEL

Laura E. Bainbridge for Plaintiffs and Appellants.

Mayall, Hurley, Knutsen, Smith & Green and Peter J. Whipple for Defendants and Respondents.

OPINION

SIMS, J.—In this case, we hold that the complaint of a high school student states a cause of action for damages against his school district and its

employees. The complaint alleges employees of the district negligently failed to protect plaintiff Jaime Leger from an attack by a nonstudent in a school restroom, where they knew or reasonably should have known the restroom was unsafe and attacks by nonstudents were likely to occur.

Plaintiff contends the trial court erroneously sustained the demurrer of defendants Stockton Unified School District (District), Dean Bettker, and Greg Zavala to plaintiff's first amended complaint without leave to amend.

■ Since a general demurrer admits the truthfulness of properly pleaded factual allegations of the complaint (*Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 804 [205 Cal.Rptr. 842, 685 P.2d 1193]), we recount the pertinent allegations: At all relevant times defendant Bettker was the principal of Franklin High School, and defendant Zavala was a wrestling coach. Each such defendant was an employee of defendant District and was acting within the scope of his employment respecting the matters stated in the complaint.

Plaintiff, a student at Franklin High School, was injured on the school campus when he was battered by a nonstudent on February 14, 1983. Plaintiff was attacked in a school bathroom where he was changing his clothes before wrestling practice. Defendants knew or should have known the bathroom was an unsupervised location unsafe for students and that attacks by nonstudents were likely to occur there.

The complaint pled three legal theories of relief against defendants. The first count alleged a violation of plaintiff's inalienable right to attend a safe school. (Cal. Const., art. I, § 28, subd. (c).) The second count alleged the constitutional provision imposed a mandatory duty on defendants, within the meaning of Government Code section 815.6, to make plaintiff's school safe, the breach of which entitled him to damages. The third count alleged defendants negligently failed to supervise him or the location where he was changing his clothes for wrestling practice, knowing or having reason to know the location was unsafe for unsupervised students.

DISCUSSION

I

*Article I, section 28, subdivision (c) of the California Constitution is not self-executing in the sense of providing a right to recover money damages for its violation.*

■ Plaintiff first argues that article I, section 28, subdivision (c) of the California Constitution is self-executing and by itself provides a right to

recover damages. That provision, enacted as a part of "the Victim's Bill of Rights," reads: *"Right to Safe Schools.* All students and staff of public primary, elementary, junior high and senior high schools have the inalienable right to attend campuses which are safe, secure and peaceful." (Referred to hereafter for convenience as section 28(c).)

Article I, section 26 of the California Constitution provides: "The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise."

■ Under this constitutional provision, all branches of government are required to comply with constitutional directives (*Mosk* v. *Superior Court* (1979) 25 Cal.3d 474, 493, fn. 17 [159 Cal.Rptr. 494, 601 P.2d 1030]; *Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco* (1973) 8 Cal.3d 942, 946 [106 Cal.Rptr. 643, 506 P.2d 1019]) or prohibitions (*Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 8 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]). Thus, in the absence of express language to the contrary, *every* constitutional provision is self-executing in the sense that agencies of government are prohibited from taking official actions that contravene constitutional provisions. (*Ibid.*) "Every constitutional provision is self-executing to this extent, that everything done in violation of it is void." (*Oakland Paving Co.* v. *Hilton* (1886) 69 Cal. 479, 484 [11 P. 3]; see *Sail'er Inn, Inc.* v. *Kirby, supra,* 5 Cal.3d at p. 8.)

■ The question here is whether section 28(c) is "self-executing" in a different sense. Our concern is whether section 28(c) provides any rules or procedures by which its declaration of rights is to be enforced, and, in particular, whether it provides citizens with a specific *remedy* by way of damages for its violation in the absence of legislation granting such a remedy. (See *Laguna Publishing Co.* v. *Golden Rain Foundation* (1982) 131 Cal.App.3d 816, 858 [182 Cal.Rptr. 813] (dis. opn. of Kaufman, J.).)

■ "A provision may be mandatory without being self-executing. It is self-executing if no legislation is necessary to give effect to it, and if there is nothing to be done by the Legislature to put it into operation. A constitutional provision contemplating and requiring legislation is not self-executing. [Citation.] In other words, it must be regarded as self-executing if the nature and extent of the right conferred and the liability imposed are fixed by the Constitution itself, so that they can be determined by an examination and construction of its terms and there is no language indicating that the subject is referred to the Legislature for action [citation]; and such provisions are inoperative in cases where the object to be accomplished is made to depend in whole or in part on subsequent legislation." (*Taylor* v. *Madigan* (1975) 53 Cal.App.3d 943, 951 [126 Cal.Rptr. 376].)

The following rule has been consistently applied in California to determine whether a constitutional provision is self-executing in the sense of providing a specific method for its enforcement: " 'A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.' " (*Older* v. *Superior Court* (1910) 157 Cal. 770, 780 [109 P. 478], quoting Cooley, Constitutional Limitations (7th ed. 1903) p. 121; see *Winchester* v. *Howard* (1902) 136 Cal. 432, 440 [69 P. 77]; *Chesney* v. *Byram* (1940) 15 Cal.2d 460, 462 [101 P.2d 1106]; *People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 637 [268 P.2d 723]; *California Housing Finance Agency* v. *Elliott* (1976) 17 Cal.3d 575, 594 [131 Cal.Rptr. 361, 551 P.2d 1193].)

We recognize that a constitutional provision is presumed to be self-executing unless a contrary intent is shown. (*Winchester* v. *Howard, supra,* 136 Cal. at p. 440; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 38, p. 3278.) ▮ Here, however, section 28(c) declares a general right without specifying *any* rules for its enforcement. It imposes no express duty on anyone to make schools safe. It is wholly devoid of guidelines, mechanisms, or procedures from which a damages remedy could be inferred. Rather, " 'it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.' " ▮ ▮ (*Older* v. *Superior Court, supra,* 157 Cal. at p. 780, citation omitted.)[1]

▮ Although not cited by plaintiff, we note that in *White* v. *Davis* (1975) 13 Cal.3d 757 [120 Cal.Rptr. 94, 533 P.2d 222], the court held that the constitutional provision protecting the right of privacy (Cal. Const., art. I, § 1)[2] was self-executing and supported a cause of action for an injunction. (13 Cal.3d at pp. 775-776.)

*White's* conclusion was based upon an "election brochure 'argument,' a statement which represents . . . the only 'legislative history' of the constitu-

---

[1] For this reason, and contrary to plaintiff's contention, section 28(c) does not supply a basis for liability under Government Code section 815.6, which provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Because section 28(c) does not supply the necessary rule for its implementation, but is simply a declaration of rights, it imposes no mandatory duty upon defendants to make Franklin High School safe. (See *Nunn* v. *State of California* (1984) 35 Cal.3d 616, 624-626 [200 Cal.Rptr. 440, 677 P.2d 846].)

[2] Article I, section 1 provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

tional amendment . . . ." (*Id.,* at p. 775.) The court reasoned that a statement in the brochure that the amendment would create " 'a legal and enforceable right of privacy for every Californian' " showed that the privacy provision was intended to be self-executing. (*Ibid.*)

By way of contrast, there is no indication in any of the sparse "legislative history" of section 28(c) to suggest it was intended to support an action for damages in the absence of enabling and defining legislation. The ballot arguments do not so much as hint at such a remedy. "The Victim's Bill of Rights" itself declares that, "The rights of victims pervade the criminal justice system, encompassing . . . the . . . basic expectation that persons who commit felonious acts causing injury to innocent victims will be appropriately detained in custody, tried by the courts, and sufficiently punished *so that the public safety is protected and encouraged as a goal of highest importance.* [¶] *Such public safety extends to public . . . senior high school campuses, where students and staff have the right to be safe and secure in their persons.* [¶] *To accomplish these goals, broad reforms in the procedural treatment of accused persons and the disposition and sentencing of convicted persons are necessary* and proper as deterrents to criminal behavior and to serious disruption of people's lives." (Art. I, § 28, subd. (a)., italics added.) Thus, the goal of public safety, including the safety of those in our schools, is to be reached through reforms in the criminal laws (see *Brosnahan* v. *Brown* (1982) 32 Cal.3d 236, 247-248 [186 Cal.Rptr. 30, 651 P.2d 274]); a private right to sue for damages is nowhere mentioned nor implied. Since the enactment of section 28(c) was accomplished without "legislative history" comparable to that relied on by the court in *White* v. *Davis, supra,* 13 Cal.3d 757, that case does not aid plaintiff's theory.

We hold that section 28(c) is not self-executing in the sense of supplying a right to sue for damages.[3] (*Older* v. *Superior Court, supra,* 157 Cal. at p. 780.)

Plaintiff relies upon *Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825 [134 Cal.Rptr. 839], and *Laguna Publishing Co.* v. *Golden Rain Foundation, supra,* 131 Cal.App.3d 816 for the proposition a self-executing constitutional provision supports an action for damages. *Porten,* following *White* v. *Davis, supra,* 13 Cal.3d 757, held a plaintiff could sue for

---

[3] This conclusion does not mean that section 28(c) is without practical effect. To implement section 28(c), the Legislature has enacted chapter 1.1 of part 1, title 15 of the Penal Code (§§ 627-627.10) establishing procedures by which nonstudents can gain access to school grounds and providing punishments for violations. The Legislature has also enacted chapter 2.5 of part 19 of division 1 of title 1 of the Education Code (§§ 32260-32296), the Interagency School Safety Demonstration Act of 1985, "to encourage school districts, county offices of education, and law enforcement agencies to develop and implement interagency strategies, programs, and activities which will improve school attendance and reduce the rates of school crime and vandalism." (Ed. Code, § 32261.)

damages for violation of his state constitutional right of privacy. (*Porten, supra,* 64 Cal.App.3d at p. 832.) We have no occasion here to determine whether we agree with *Porten,* because it is premised on the violation of a different, self-executing provision of the Constitution. Although not cited by plaintiff, *Fenton* v. *Groveland Community Services Dist.* (1982) 135 Cal.App.3d 797 [185 Cal.Rptr. 758] is similarly distinguishable because it relies upon the self-executing nature of article II, section 2 of our Constitution, guaranteeing a right to vote. (*Fenton, supra,* at p. 805.)

*Laguna Publishing Co.* v. *Golden Rain Foundation, supra,* 131 Cal.App.3d 816, also fails to support plaintiff's theory. There, the court held plaintiff could pursue recovery of damages for violation of its right to free speech guaranteed by article I, section 2 of our state Constitution. (Pp. 853-854.) However, contrary to plaintiff's suggestion, *Laguna Publishing* was not premised upon the self-executing nature of the subject constitutional provision. (See *id.,* at p. 851.) ▮ ▮ ▮ ▮ Rather, *Laguna Publishing* followed *Melvin* v. *Reid* (1931) 112 Cal.App. 285 [297 P. 91] in allowing a cause of action for violation of free speech rights without regard to the self-executing nature of the constitutional provision.[4] (*Laguna Publishing Co., supra,* at pp. 852-853.) The court also relied upon Civil Code sections 1708 and 3333. (*Ibid.*) The case is therefore inapposite to the theory advanced by plaintiff.

---

[4]To the extent *Laguna Publishing* follows *Melvin* v. *Reid, supra,* 112 Cal.App. 285, the case represents a specie of "constitutional tort." " 'The civil remedy for *constitutional* torts is a direct claim by the victim of the official wrongdoing to secure compensation for the denial of his *constitutional* rights.' [Citation.]" (*Fenton* v. *Groveland Community Services Dist., supra,* 135 Cal.App.3d at p. 803, italics in original; see *Bivens* v. *Six Unknown Fed. Narcotics Agents* (1971) 403 U.S. 388 [29 L.Ed.2d 619, 91 S.Ct. 1999]; *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 474-475 [156 Cal.Rptr. 14, 595 P.2d 592]; *Stalnaker* v. *Boeing Co.* (1986) 186 Cal.App.3d 1291, 1302-1308 [231 Cal.Rptr. 323].) "Without question, the rebirth of reliance on state bills of rights is one of the most fascinating developments in civil rights law of the last two decades." (Friesen, *Recovering Damages for State Bills of Rights Claims* (1985) 63 Tex.L.Rev. 1269.) "The literature on the renewed use of state constitutions is already too long to collect conveniently in a footnote." (*Id.,* at fn. 2; see, e.g., Wells, *The Past and the Future of Constitutional Torts: From Statutory Interpretation to Common Law Rules* (1986) 19 Conn.L.Rev. 53; Comment, *The Right to Safe Schools: A Newly Recognized Inalienable Right* (1983) 14 Pac. L.J. 1309; Love, *Damages: A Remedy for the Violation of Constitutional Rights* (1979) 67 Cal.L.Rev. 1242; Katz, *The Jurisprudence of Remedies: Constitutional Legality and the Law of Torts in Bell* v. *Hood* (1968) 117 U.Pa.L.Rev. 1.)

"Whether a cause of action can be inferred from the Constitution, without any explicit statutory authorization, is a complex question and one which is mired in the dark ages of constitutional law." (Yudof, *Liability for Constitutional Torts and the Risk-Averse Public School Official* (1976) 49 So.Cal.L.Rev. 1322, 1354, fn. omitted.) Plaintiff has not argued that he is entitled to recover money damages for violation of a constitutional right even where the subject constitutional provision is not self-executing. We will not investigate this "complex question" on our own motion. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 479, pp. 469-470.)

## II

*Defendant District is liable to plaintiff pursuant to Government Code sections 815.2 and 820.*

■ Plaintiff also contends that ordinary principles of tort law imposed a duty upon defendants to use reasonable care to protect him from the attack in the pleaded circumstances. At this point, we agree.

### A. *Plaintiff has pled that defendants owed him a duty of care.*

The first question is whether defendants owed plaintiff a duty of care. (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 22 [192 Cal.Rptr. 233, 664 P.2d 137].)

■ The existence of a duty of care is a question of law, for legal duties express conclusions that in certain cases it is appropriate to impose liability for injuries suffered. (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 434 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)

■ "As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct. Such a duty may arise, however, if '(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection.' (Rest. 2d Torts (1965) § 315; *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 751-752 [167 Cal.Rptr. 70, 614 P.2d 728]; *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].)" (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 203 [185 Cal.Rptr. 252, 649 P.2d 894]; see also *Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 788-789 [221 Cal.Rptr. 840, 710 P.2d 907]; *Williams* v. *State of California, supra,* 34 Cal.3d at p. 23.)

In *Rodriguez* v. *Inglewood Unified School Dist.* (1986) 186 Cal.App.3d 707 [230 Cal.Rptr. 823], the court considered whether a school district could be held liable when a student was assaulted on campus by a nonstudent. ■ On the question of duty, the court concluded "that a special relationship is formed between a school district and its students so as to impose an affirmative duty on the district to take all reasonable steps to protect its students." (P. 715.)

■■ Although *Rodriguez* did not address the question, we think it obvious that the individual school employees responsible for supervising

plaintiff, such as the principal and the wrestling coach, also had a special relation with plaintiff upon which a duty of care may be founded. (See *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d at p. 436.) A contrary conclusion would be wholly untenable in light of the fact that "the right of all students to a school environment fit for learning cannot be questioned. Attendance is mandatory and the aim of all schools is to teach. Teaching and learning cannot take place without the physical and mental well-being of the students. The school premises, in short, must be safe and welcoming. . . . [¶] The public school setting is one in which governmental officials are directly in charge of children and their environs, including where they study, eat and play. . . . Further, the responsibility of school officials for each of their charges, the children, is heightened as compared to the responsibility of the police for the public in general." (*In re William G.* (1985) 40 Cal.3d 550, 563 [221 Cal.Rptr. 118, 709 P.2d 1287].)

██ *Rodriguez* notwithstanding, defendants still contend they should owe no duty to protect plaintiff from this attack. They correctly contend that neither school districts nor their employees are the insurers of the safety of their students. (*Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747 [87 Cal.Rptr. 376, 470 P.2d 360].) But plaintiff makes no assertion of strict liability; rather, the complaint pleads negligence. Defendants do owe plaintiff a duty to use the degree of care which a person of ordinary prudence, charged with comparable duties, would exercise in the same circumstances. (*Ibid.*)

██ Of course, in the present circumstances, the existence of a duty of care depends in part on whether the harm to plaintiff was reasonably foreseeable. (See *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 125 [211 Cal.Rptr. 356, 695 P.2d 653].) Neither schools nor their restrooms are dangerous places per se. (Cf. *Peterson* v. *San Francisco Community College Dist., supra,* 36 Cal.3d at p. 812.) Students are not at risk merely because they are at school. (See *Chavez* v. *Tolleson Elementary School Dist.* (1979) 122 Ariz. 472 [595 P.2d 1017, 1 A.L.R.4th 1099].) A contrary conclusion would unreasonably "require virtual round-the-clock supervision or prison-tight security for school premises, . . ." (*Bartell* v. *Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492, 500 [147 Cal.Rptr. 898].)

██ Here, however, plaintiff's first amended complaint pled that defendants knew or should have known that he was subject to an unusual risk of harm at a specific location on school grounds. Thus, the complaint alleged defendants knew or should have known that members of the junior varsity wrestling team (including plaintiff) were changing clothes before wrestling practice in the unsupervised boys' restroom, that defendants knew or should have known the unsupervised restroom was unsafe for students,

and that attacks were likely to occur there. These allegations sufficiently state that the harm to plaintiff was reasonably foreseeable in the absence of supervision or a warning. Plaintiff had no obligation to plead that prior acts of violence had occurred in the restroom. (See *Isaacs* v. *Huntington Memorial Hospital, supra,* 38 Cal.3d at p. 129.) ■■■ For example, school authorities who know of threats of violence that they believe are well-founded may not refrain from taking reasonable preventive measures simply because violence has yet to occur. (See *id.,* at pp. 125-126.)

■■■ Whether plaintiff can prove these allegations, or whether it will be difficult to prove them, are not appropriate questions for a reviewing court when ruling on a demurrer. (*Concerned Citizens of Costa Mesa, Inc.* v. *32nd Dist. Agricultural Assn.* (1986) 42 Cal.3d 929, 936 [231 Cal.Rptr. 748, 727 P.2d 1029].)

Defendants argue they should owe no duty to plaintiff because school districts cannot afford the liability. ■■■ This court has recognized that the availability of funds is a valid policy consideration in determining whether to impose a duty of care on a school district. (*Wright* v. *Arcade School Dist.* (1964) 230 Cal.App.2d 272, 278 [40 Cal.Rptr. 812]; *Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847]; see also *Bartell* v. *Palos Verdes Peninsula Sch. Dist., supra,* 83 Cal.App.3d at p. 500.)

■■■ However, the record contains no information bearing upon the budgets of school districts generally, nor of this defendant District in particular, nor upon the cost or availability of insurance. Nor have we been cited to materials of which we might take judicial notice. With the record in this posture, we agree with defendants, who candidly admit in their brief, "If there is a remedy to this situation, it is not with the courts but with the Legislature."

We therefore conclude plaintiff has adequately pled that defendants breached a duty of care they owed him.

B. *There is a statutory basis for liability.*

Even though *Rodriguez* v. *Inglewood Unified School Dist., supra,* determined a school district has a duty to protect students on campus from violent assaults by third parties, the court concluded the defendant school district was not liable because no statute provided for liability. (186 Cal.App.3d at pp. 715-716.) ■■■ "[I]n California, all government tort liability must be based on statute. . . ." (*Lopez* v. *Southern Cal. Rapid Transit Dist., supra,* 40 Cal.3d at p. 785, fn. 2, citation omitted.)

However, *Rodriguez* did not examine Government Code sections 815.2 and 820, imposing liability on a public entity for the torts of its employees.

(All further statutory references are to the Government Code unless otherwise indicated.) ■■■ "It is axiomatic that cases are not authority for propositions not considered." (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7 [82 Cal.Rptr. 724, 462 P.2d 580]; *Milicevich* v. *Sacramento Medical Center* (1984) 155 Cal.App.3d 997, 1005-1006 [202 Cal.Rptr. 484].)

Here, as we have noted, plaintiff has sued employees of the District and pursues the District on a theory of respondeat superior. (See *Perez* v. *Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 967-968 [227 Cal.Rptr. 106, 719 P.2d 676].) Section 820 provides in relevant part that except as otherwise statutorily provided, "a public employee is liable for injury caused by his act or omission to the same extent as a private person." (Subd. (a).) Section 815.2 provides in pertinent part that the entity "is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee . . . ." (Subd. (a).) Thus, "the general rule is that an employee of a public entity is liable for his torts to the same extent as a private person (§ 820, subd. (a)) and the public entity is vicariously liable for any injury which its employee causes (§ 815.2, subd. (a)) to the same extent as a private employer (§ 815, subd. (b))." (*Societa per Azioni de Navigazione Italia* v. *City of Los Angeles* (1982) 31 Cal.3d 446, 463, fn. omitted [183 Cal.Rptr. 51, 645 P.2d 102]; see Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) §§ 2.31-2.32, pp. 74-80.)

The next question is: would a private school and its employees be liable in the pleaded circumstances? The answer is "yes."

■■■ "As a general rule, it has been held that a [private] school is not required to provide constant supervision over pupils at all times. Thus, no supervision is required where the school has no reason to think any is required. . . . [¶] *It appears that a [private] school has a duty to provide supervision with respect to a particular activity if the school officials could reasonably anticipate that supervision was required . . . .*" (Annot., Tort Liability of Private Schools and Institutions of Higher Learning for Negligence of, or Lack of Supervision By, Teachers and Other Employees or Agents (1971) 38 A.L.R.3d 908, 916, fns. omitted; italics added.)

■■■ "Where a student is injured in performing a task on the direction of school authorities without supervision, the question of [private] school negligence is one for the jury if there is evidence of the existence of a danger known to the school authorities, who neglect to guard the student against such danger, or if there is an unknown danger which the school, by the exercise of ordinary care as a reasonably prudent person, would have discovered." (38 A.L.R.3d at p. 919, fn. omitted.)

"Where the liability of the [private] school is sought to be predicated on alleged negligence of teachers or other employees or agents of the school, it is generally recognized that liability on the part of the school may be established under the doctrine of respondeat superior if negligence within the scope of their employment is shown." (38 A.L.R.3d at p. 912.)

In *Schultz* v. *Gould Academy* (Me. 1975) 332 A.2d 368, the Supreme Court of Maine held a private girls' school was liable for the negligence of its night watchman who failed to prevent a criminal assault on a 16-year-old girl student by an unknown intruder in a school dormitory. At about 3 a.m., the watchmen had observed footprints in fresh snow leading up to the building and on a roof adjacent to a screened but unlocked second story window. (*Id.,* at p. 369.) The watchman saw water on stairs leading to the basement; a stairwell also connected the basement to upper floors in the dorm. (*Ibid.*) Although the watchman investigated storage rooms in the basement, he did not alert anyone to the possibility that the intruder was on the upper floors where the attack occurred. (*Id.,* at pp. 369-370, fn. 3.)

The court held that the employee and the school had a duty to guard the students against dangers of which they had actual knowledge and those which they should reasonably anticipate. (332 A.2d at p. 371.) The court concluded that, "forewarned by furtive and intrusive movements in and around the girls' dormitory, a reasonably prudent man, charged with the protection of the dormitory's young female residents would have taken some measures to avert the likelihood that one (or more) of them would be physically harmed." (*Id.,* at p. 372.)

We think the foregoing authorities state the appropriate law to be applied in California. Under these authorities, if defendants here were in the private sector, they would be liable to plaintiff upon the facts pled in the first amended complaint. We therefore conclude that the defendant employees are similarly liable under section 820, and the District is liable under section 815.2 unless some other statute grants immunity from liability.

## III

*On demurrer, the District is not entitled to immunity.*

Defendants contend imposition of liability in such a situation would contravene section 845, which provides in relevant part that, "Neither a public entity nor a public employee is liable for failure to . . . provide police protection service or . . . for failure to provide sufficient police protection service." Defendants argue that imposing a duty on the District is tantamount to requiring them to have a police or security force. This contention

was persuasive below; the trial court granted the demurrer based in part on section 845.

■ However, section 845 was designed to protect from judicial review in tort litigation the political and budgetary decisions of policymakers, who must determine whether to provide police officers or their functional equivalents. (*Lopez* v. *Southern Cal. Rapid Transit Dist., supra,* 40 Cal.3d at p. 792; *Taylor* v. *Buff* (1985) 172 Cal.App.3d 384, 391 [218 Cal.Rptr. 249].) ■ Plaintiff's complaint does not plead that defendants should have provided police personnel or armed guards. There are measures short of the provision of police protection services, such as posting warning signs or closer supervision of students who frequent areas of known danger, that might suffice to meet the duty of reasonable care to protect students. (See *Lopez* v. *Southern Cal. Rapid Transit Dist., supra,* at pp. 787-788, 791-793.) We cannot assume as a matter of law, and without proof on the question, that defendants' duty could be satisfied only by the provision of a police protection service. (*Ibid.*)

The trial court erred when it sustained defendants' general demurrer to plaintiff's first amended complaint.

## DISPOSITION

The judgment is reversed.

Sparks, Acting P. J., and Watkins, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.