Filed 5/14/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| D.Z., | B283799 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC484110) |
| v. | |
| LOS ANGELES UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Malcolm H. Mackey, Judge. Reversed and remanded with directions.

Carrillo Law Firm, Luis A. Carrillo, Michael S. Carrillo; Esner, Chang & Boyer, Holly N. Boyer, Shea S. Murray and Steffi A. Jose, for Plaintiff and Appellant.

Baute Crochetiere & Hartley, Mark D. Baute, David P. Crochetiere for Defendant and Respondent.

**INTRODUCTION**

Appellant D.Z.[1] sued respondent Los Angeles Unified School District (LAUSD), alleging negligent supervision arising out of her claim that she was sexually abused by her high school teacher, James Shelburne.  She further alleged that LAUSD knew or should have known of the danger posed by Shelburne, and the district's failure to respond appropriately to that knowledge resulted in harm to her.  The jury found in favor of LAUSD.

Appellant asserts numerous errors on appeal. First, she contends that the court erred in limiting the evidence of Shelburne's purported misconduct to acts involving touching students, thereby excluding a relevant history of escalating inappropriate conduct that went unchecked by LAUSD.  Second, appellant contends the court committed prejudicial error in giving several jury instructions and using the special verdict form proposed by LAUSD.  Finally, she argues that the court improperly excluded her rebuttal expert witness from trial.

We conclude that the court abused its discretion in excluding all evidence of conduct by Shelburne that did not involve physical touching.  Further, this error was prejudicial to appellant.  We therefore reverse the judgment and remand the matter for retrial.  In addition, although we need not reach appellant's jury instruction claims, we address them for the benefit of any retrial in this matter.

**FACTUAL AND PROCEDURAL HISTORY**

**I.    *Complaint***

Appellant filed her complaint in May 2012 alleging a cause of action for negligence against LAUSD, Shelburne, and other district employees, as well as a cause of action for respondeat superior liability against LAUSD.  She

---

[1] The record reflects some inconsistency regarding reference to appellant, as well as other students, by full name or by initials only.  The students were minors at the time of the incident in 2010 and appellant filed her complaint in 2012 as a minor through her guardian ad litem.  However, by the time of trial in 2017, they were adults.  Appellant requests that we refer to her by her initials.  In light of that request, the sensitive nature of the case, and their status as minors at the time the alleged conduct occurred, we refer to appellant and the other students by first name or by initials.  (See California Rules of Court, rules 8.90(b) and 8.401.)

alleged that in September 2010, she was 16 years old, in eleventh grade at Miguel Leonis High School (MLHS), and enrolled in three classes taught by Shelburne. Between September and October 26, 2010, appellant alleged that Shelburne engaged in multiple acts of sexual abuse, including hugging her tightly, touching her hands and back in a way that made her uncomfortable, and pressing his genitals against her. She also alleged that Shelburne took inappropriate photographs of female students. In her first cause of action for negligence, she alleged that LAUSD failed to properly train and supervise its staff to protect students from sexual abuse. Further, she alleged that LAUSD knew or should have known of Shelburne's harmful conduct and nevertheless continued to retain him as an employee.

Appellant later dismissed Shelburne and the other individual defendants, as well as her respondeat superior claim, proceeding to trial in April 2017 on her negligence claim against LAUSD.

## II. *Evidence at trial*

### A. *The school*

MLHS is a continuation high school within LAUSD that enrolls "at-risk" students who struggled in the larger, traditional high school setting. The school is small, with around 130 students, four to five teachers, a few assistant teachers, and one or two administrators. Each teacher is responsible for multiple subjects and the students move between classrooms and subjects each day based on their individual needs; the witnesses largely agreed that the relationship between teacher and student was "closer" than in a traditional high school. While the testimony varied at trial as to how much time a student was required to spend in a particular teacher's classroom, the witnesses generally testified that for some portion of the day, each student was required to check in and work with a specific teacher, but that for the rest of the day, the students were independent and could choose where to work. The school used timecards to determine students' credit toward each class.

Shelburne taught math, physical education, and several electives at MLHS from 1994 to 2010. MLHS had three principals during that time period—Odus Caldwell from 1986 to 2007, Collura Franklin from 2007 to 2009, and Wendy Garcia from 2009 to June 2011. The four classrooms at

MLHS are connected to each other and to the principal's office. Shelburne's classroom was located next to the principal's office; when leaving the office, one would walk through Shelburne's classroom to reach any other classroom. Caldwell and Garcia both testified at trial that they would walk through the classrooms multiple times per day observing staff and students; in addition, if the principal's office door was open, he or she could see directly into Shelburne's class.

Multiple witnesses testified regarding the LAUSD policies, code of conduct, and training on sexual harassment and child abuse. Garcia testified that administrators and teachers received semi-annual training on the policies and reporting requirements. She also discussed training on the code of conduct, including that employees should avoid touching or having physical contact with students that is not age appropriate or within the scope of their employment. As mandated reporters, the teachers and administrators were required to report any suspected abuse by filing a Suspected Child Abuse Report (SCAR) with the child abuse unit of the Los Angeles Police Department (LAPD), as well as an LAUSD incident report.

B.     *Appellant*

Appellant began attending MLHS in September 2010, after she was expelled from her prior school for throwing a book at the dean. She testified that Shelburne first touched her during her first week at the school. She was sitting in the back of Shelburne's classroom, when he "came and rested his body really close to mine." She described that Shelburne leaned over her desk, with one hand on her desk and the other hand on her back. He also pressed his body into hers, so that she "felt his stomach and his thing." She moved away from him and he eventually walked away. Afterward, she "thought it was in [her] head" and did not tell anyone because she was scared.

Appellant testified that Shelburne also touched her and made her uncomfortable and scared later that same day, during volleyball class. He told her he was going to teach her to serve the ball, then stood behind her and put his arms around her so that she could feel his arms and stomach. He started massaging her hands. He then moved away, caressing her arms as he did so.

4

In addition, appellant detailed other instances of touching by Shelburne when she would approach his desk to have him approve her time card or retrieve other paperwork. She testified that Shelburne hugged her from behind about four times, and that she could feel his stomach and penis. He also hugged her from the front eight or nine times, tightly enough so that her chest was on his. After the first instance, she told then-principal Garcia about the hugging, that she was very uncomfortable and Shelburne was being "very inappropriate." According to appellant, Garcia responded that Shelburne was a good teacher and it was "probably just me." Appellant said that she then "cussed [Garcia] out."

About a week later, on October 26, 2010, appellant was sitting in Shelburne's classroom when he came up and asked if she needed a ride home. She said no and started to get up. Shelburne had one hand on the classroom door and put his other hand under her clothes, touching her bare buttocks. Appellant left the room, feeling like the encounter was her fault.

The following day, October 27, appellant was again sitting in the back of Shelburne's classroom. Shelburne called her to his desk, but she ignored him; he called her name louder and then enlisted other students to get her attention until she went up to him. He showed her a paper but would not give it to her unless she came closer. When she did, he put his hand on her buttocks, under her clothes. Appellant did not remember how she responded, but testified that Shelburne yelled at her to get out of his class, and she left crying. She went to the bathroom.

Later that morning, appellant's friend, Tania R., convinced her to report the incident to Garcia. Appellant testified that she did not want to speak to Garcia, because "I tried talking to her before." But she agreed to go with Tania, who had been in the classroom during the incident. Appellant told Garcia only that Shelburne had touched her back; she did not report everything that happened because she was scared Garcia would not believe her. Garcia asked appellant to prepare a written statement reporting what had happened. In the statement, appellant stated that she "felt weird when [Shelburne] put his hand on my back. Like it just didn't feel normal." She moved away and told him, "don't touch me." Shelburne then "told me to leave his class so I did."

5

Appellant called Garcia two days later with additional information. She testified that her father "forced" her to make the telephone call because he wanted her to tell Garcia everything. According to Garcia's report of that call, appellant said Shelburne "didn't just touch her on the back...he touched her on the behind" more than twice. Garcia asked appellant to come back to school to provide another report, but appellant was hospitalized shortly afterward for cutting her arms and legs and threatening to kill herself. Appellant remained in the hospital for several days on an involuntary hold.

C.      *Other reports of potential misconduct*

In September of 2009, about a year prior to the incident between appellant and Shelburne, Garcia met with several female students and MLHS teacher Janet Silverstein regarding their complaints about Shelburne. That meeting was documented by Garcia in a single page of notes dated September 29, 2009. As reflected in the notes, the students first complained about a comment by Shelburne that "If [student] fell forward her face would not hit the ground."[2] The students also told Garcia that they had "heard before coming to Leonis that Mr. Shelburne was a 'perv.' That he patted them on their back and made comments." Garcia's notes reflect that she asked the students if they were uncomfortable going into Shelburne's classroom and they said they were not. The students' statements about Shelburne being a "perv" and patting them were admitted at trial through several witnesses, along with Garcia's redacted notes.

Tania, appellant's friend, attended MLHS from 2008 to 2013 and had several classes with Shelburne. She testified that she did not like going up to Shelburne's desk because "he tended not to have eye contact with you." As she would hand over her time card, he would "hit your breast, like random weird things like that. Accidental or not, but still not comfortable." She did not think Shelburne touching her breast was accidental more than maybe the

---

[2] This portion of the notes was redacted from the version admitted at trial as Exhibit 23. As discussed further below, prior to trial, the court granted two motions in limine filed by LAUSD, excluding evidence of conduct by Shelburne other than conduct involving touching. As a result, the exhibit and testimony about the students' complaints did not discuss the substance of the comment Shelburne made or the investigation subsequently done by Garcia.

6

first or second time. After he hit her breast two or three times, Tania started avoiding Shelburne by asking the student teaching assistant to clock her out. Tania also testified that Shelburne would go around the classroom "massaging" students on the shoulders or lower back, saying they "looked stressed out" and patting them on the back. She felt there was no choice, because "as long as you played nice, he let you get away with things and let you do whatever you want as long as you kind of kept him on your good side." He would also touch her when teaching how to serve in volleyball, standing right behind her so that she could feel his belly behind her and his hands on her hands. She felt "uncomfortable" and that the conduct was "kind of disrespectful." Tania stated that sometimes when Shelburne talked to her or other students, he would "place his hand on your hand or on your arm, on your leg."

Tania testified that she saw Shelburne touch appellant on multiple occasions, including during volleyball practice and leaning over to explain a math problem. Tania stated that she was in the classroom during the incident between appellant and Shelburne on October 27, 2010; she did not see where he was touching appellant, she looked up when appellant said something to Shelburne and saw "his hand coming off." She said that "every time you saw Shelburne, his hands was coming off of somebody." Tania claimed it was a "shock" for appellant to verbally react, because "nobody really says nothing. Everybody goes with it." When appellant spoke out, everyone stopped and looked, Shelburne turned red, and appellant's eyes became watery. Shelburne then got mad and kicked appellant out of the classroom.

Tania found appellant outside of class and convinced appellant to talk to Garcia. In addition, Tania and several other female students complained to Garcia that day. Tania testified that they "gave [Garcia] our thoughts and concerns and how things weren't being done, even it being said for a couple years already. Kind of like everybody had enough already." Tania told Garcia about prior disrespectful comments made by Shelburne, as well as the touching, said that she felt uncomfortable, and asked if there was any way to switch to classes not taught by Shelburne. Tania also wrote a statement on October 27, 2010, reporting that appellant had told her Shelburne "was

holding her lower back," appellant told him not to touch her, and Shelburne kicked appellant out of class.

Tania testified that she met with Garcia two or three times to report that Shelburne touched her. She could not recall complaining to Garcia in 2009.

Silverstein testified that she felt "incredibly strongly" that Shelburne "had caused harm to the students, and I was glad that this was being followed up with." She was a teacher at MLHS from 2007 to 2012. Silverstein stated that from 2007 to 2009, during Franklin's tenure as principal, Silverstein saw Shelburne hug female students, massage their shoulders, and rub their hands. She also saw him stare at the breasts of female students. In addition, female students reported to her negative behavior by Shelburne and told her that they were uncomfortable with him touching them. Silverstein testified that she did not feel it was appropriate for her to report this to the principal, so she encouraged the students to do so. She continued to observe this behavior between 2009 and 2011 under principal Garcia. In total, students reported to her over half a dozen times that they were uncomfortable with Shelburne's behavior. Silverstein testified that she encouraged them to report to Garcia, and she also followed up directly with Garcia and discussed those reports. She discussed complaints regarding physical touching several times with Garcia and believed that Garcia was keeping a log of the complaints. She received a complaint from one male student regarding Shelburne's touching of his girlfriend; that student told Silverstein that he wanted to be violent toward Shelburne because of the touching.

Silverstein also testified generally regarding an instance when three students came to her to report a comment made by Shelburne. She could not recall when that occurred. She also could not recall whether there was any instance when she went to Garcia with a complaint and it resulted in a SCAR. In response to a question by LAUSD's counsel, she began to state that she thought Garcia "was aware when she came on board . . . that Mr. Caldwell, a prior principal, had already started documenting . . ." LAUSD's counsel cut her off, objected to his own question based on the rulings on the motion in limine, and proceeded to a different question.

Silverstein acknowledged that she was a mandatory reporter, but stated she felt she had done her job by reporting the conduct to the principal. She also said that she felt the touching was inappropriate, but not abuse. However, she testified that, in retrospect, she should have formally reported it and regretted failing to file SCARs based on the students' reports of touching.

Nicole Rose-Manning worked at MLHS as a special education trainee, then assistant, from 2005 to 2010. She testified that she worked in all of the classrooms helping students, but spent most of her time working on math in Shelburne's class. She said that Shelburne "made me feel uncomfortable in different ways" including in his comments to her and things she witnessed in class. According to Rose-Manning, Shelburne showed "complete favoritism" toward the female students, including allowing girls to wear flip-flops in P.E. and allowing female students to input time on their own timecards. Under Caldwell, she often saw Shelburne hugging female students. She described seeing Shelburne engaging in "a lot of close hugging," putting one arm around students, and putting his hand on a girl's leg or thigh. She did not report this conduct to Caldwell because she was new and scared of the principal.

Rose-Manning continued to witness the same conduct when Franklin was principal, and she reported it to Franklin three times. She also saw the same conduct under Garcia and reported one incident. She was not aware of any investigation following that report. She did not witness anything involving appellant, as Rose-Manning left in March 2010.

Robin Cunningham worked at MLHS from 2006 to 2012 as the office manager under Caldwell, Franklin, and Garcia. She testified that Caldwell and Garcia mostly kept the door to the principal's office open; Franklin kept the door mostly closed during her time as principal. Cunningham admitted that she thought Shelburne was creepy. She saw him hug students, but stated that she did not think the hugs were inappropriate. She denied seeing Shelburne touch students' hands or massage their shoulders, and denied ever telling Garcia that Shelburne was touching students inappropriately. Cunningham was not aware of any complaints to Garcia about Shelburne by appellant, any other student, or Silverstein prior to October 27, 2010. She

9

also testified that she thought Garcia's investigation following appellant's October 27, 2010 complaint was "extremely" thorough.

D.   *Principals Caldwell and Garcia*

Caldwell testified that he performed teacher evaluations, including of Shelburne, every two years. He did not recall receiving complaints about Shelburne after Shelburne started in 1995. He did not recall documenting any complaints or initiating any investigations related to Shelburne. He never saw Shelburne touching a student's private parts and never received any such complaint. Caldwell considered Shelburne one of the best teachers at the school and gave him positive performance evaluations.

Garcia testified that when she came to MLHS as principal, she worked closely with Caldwell during the transition, but never spoke to Franklin, who had left at the end of the prior school year. When she began as principal, no one on staff told her about any complaints about Shelburne touching students. However, Cunningham did say Shelburne was "sleazy." Garcia testified that she observed the teachers and students very carefully and "was in and out of those [class]rooms all day long."

Garcia denied that Rose-Manning ever reported that Shelburne touched students inappropriately. She did receive a complaint in September 2009 from Silverstein and two students. As documented in her notes, the students reported that they "had heard before coming to Leonis that Mr. Shelburne was a perv and that he patted them on the back and made comments." Garcia interpreted this as meaning that the students were reporting rumors of patting, not that they had personally been touched by Shelburne or seen him do so. Both students told Garcia they were not uncomfortable returning to Shelburne's classroom. Garcia did not file a SCAR regarding this report of touching, but testified vaguely that she did file one for something else at that time. She did not testify as to that SCAR report or detail the comment that precipitated it. Garcia did not recall whether she discussed the patting allegation with Shelburne or documented it in his file. She did not do any reporting or investigation related to the patting. She did acknowledge that the allegation regarding patting "raise[d] a red flag."

10

Garcia did not recall receiving any complaint from appellant prior to October 27, 2010. She received four complaints on the morning of October 27, 2010. The first was by Tania, reporting what had happened to appellant. Garcia had Tania write a statement and asked her to try to convince appellant to come speak with her. About a half hour later, Garcia received a complaint from a second student, who said she witnessed the interaction between Shelburne and appellant. This student wrote a report, stating that she saw Shelburne's "hand backing off but I didn't see it on [appellant]." The student said that appellant told her "she doesn't like it when he touches her that next time she's going to tell him off."

The third report that morning came from appellant, a short time later. According to Garcia, appellant was very quiet and soft-spoken during the interview and appeared to be sincere. Garcia agreed that the conduct appellant reported was sexual harassment and sexual abuse under respondent's policies. She asked appellant to write a statement.

Garcia received a fourth complaint from another student, B.P., later that morning. B.P. wrote a statement and told Garcia that Shelburne had touched her and her friends. Garcia completed a SCAR based on B.P.'s report.

Garcia then called the district office and reported the allegations; she also filed a SCAR based on appellant's complaint. Appellant called her two days later and reported additional information. Appellant seemed upset during the call, and Garcia felt appellant was afraid to talk because she was whispering. During that call, appellant told Garcia that Shelburne had also touched her on the buttocks, more than twice. Garcia then prepared an updated report with this information. She also filed an LAUSD incident report.

Garcia detailed at length her investigation following the October 27, 2010 complaints. She met with appellant's parents and interviewed other students. She sent Shelburne home the following day, October 28, 2010. She told Shelburne not to speak with any of the students about his absence or anything regarding the situation. Shelburne then took a leave of absence and ultimately retired in April 2011.

11

Following Garcia's updated SCAR on October 29, 2010, investigating officers from the LAPD interviewed the students with Garcia present. According to Garcia, B.P. told the officers, consistent with her prior report, that Shelburne touched her leg and lower back while assisting her in the classroom. B.P. also said that Shelburne touched all of the students in this manner and she was uncomfortable around him. Tania told the officers that Shelburne touched her and other female students on the back and the legs. She also reported that Shelburne sometimes stood behind students and looked over their shoulders and it made her very uncomfortable. Appellant was not present for the LAPD interview because she was hospitalized at the time. Garcia also acknowledged her notes reflecting other statements made by students during the course of the investigation, including several references to Shelburne pressing his belly against a student, holding a student's hand, standing "way too close," touching a student's hips, and grabbing "you by your waist. He's a pervert. He likes to hug."

E.    *Shelburne*

Shelburne testified that prior to October 2010, he had never been subject to a claim that he had inappropriately touched a student and no one had complained to him about any touching or standing too close. He denied all of the conduct alleged. In response to appellant's claim that she could feel his erect penis against her on several occasions, Shelburne testified that he had been taking blood thinners since 2006, which "makes it practically impossible" to have an erection; in fact, he stated that he had not had one since 2006. Shelburne was interviewed by the LAPD and the city attorney's office as part of the investigation. He testified that he was told it was a "he-said she-said" issue and the matter would not be pursued. Conversely, the LAPD did not determine that the report of suspected child abuse was unfounded.

F.    *Experts*

Both parties presented testimony from education experts regarding the standard of care for the district. Appellant's expert, Dr. Marian Stephens, acknowledged that LAUSD's policies were "excellent" but nevertheless opined that LAUSD did not meet the standard of care, because "they were faced with information that told them, at various stages, that there were students at

12

risk . . . subjected to kind of inappropriate behaviors on the part of the teacher that made them uncomfortable," which administrators failed to adequately report or thoroughly investigate. Dr. Stephens also discussed grooming conduct that could lead to child abuse, such as where a teacher has "more and more contact with the student and offers to give the student rides home where they can be alone in the car; offers to assist the student . . . again, having increased contact and even, to some extent, touching." She noted that the touching could be subtle at first, such as hugging or minor body contact, to test the victim's comfort level and response. She opined that, in this case, the reports of patting should have been identified and addressed as potentially inappropriate. She also testified that LAUSD had notice of inappropriate touching by Shelburne as early as September 2009. She did not have any criticism of Garcia's handling of the incident from October 27, 2010 onward.

Defense expert Larry Perondi opined that Garcia's response was appropriate to both the 2009 and 2010 complaints. He acknowledged that the report of touching in 2009 would obligate the principal to investigate.

Both parties also presented psychological experts, who diagnosed appellant with various disorders, opined whether any of those disorders were caused by the incident with Shelburne, and opined as to appellant's emotional distress and damages.

## III. *Verdict and Judgment*

After a nearly two-week trial, the jury returned a verdict in LAUSD's favor. In response to the first question of the special verdict—"Do you find that James Shelburne, as an employee of [LAUSD], posed a risk of sexually abusing students?"—the jury answered "no" by a vote of ten to two.

The court entered judgment in LAUSD's favor. Appellant timely appealed.

## DISCUSSION

## I. *Exclusion of Evidence*

Appellant contends the court erred by excluding all evidence of prior inappropriate conduct by Shelburne that did not involve physical touching of students. She argues that by doing so, the court excluded "a substantial body of evidence" relevant to showing that Shelburne posed a risk of sexual abuse

13

to the students and that LAUSD knew or should have known of such a risk. We agree. The trial court abused its discretion by finding that the only evidence relevant to this case was other instances of physical touching and excluding other relevant evidence, such as a sexual comment by Shelburne to a student that was egregious enough to trigger an investigation by the school. Further, this error was prejudicial to appellant, as it distorted much of the evidence presented and severely hampered appellant's ability to present her case.

A.   *Legal standards*

Under Evidence Code[3] section 352, a trial court has the discretion to exclude otherwise relevant evidence when its probative value is substantially outweighed by "the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." We review the trial court's ruling excluding evidence under section 352 for an abuse of discretion. (*People v. Fuiava* (2012) 53 Cal.4th 622, 663; *People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 639.) "'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566; see also *People v. Carrington* (2009) 47 Cal.4th 145, 195 [an abuse of discretion is "established by 'a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice'"].)

It is well established that "school personnel owe students under their supervision a protective duty of ordinary care." (*C.A. v. William S. Hart Union High Sch. Dist.* (2012) 53 Cal.4th 861, 865 (*C.A.*); *Dailey v. Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747.) Further, "a school district is liable for the negligence of supervisory or administrative personnel who knew, or should have known," of the foreseeable risk to students of sexual abuse by an employee and nevertheless hired, retained, and/or inadequately supervised that employee. (*C.A., supra*, 53 Cal.4th at p. 865.)

In *C.A.*, a student sued his school district for negligent hiring, retention, and supervision, based on alleged sexual harassment and abuse by

---

3 All further statutory references are to the Evidence Code unless otherwise stated.

14

his high school guidance counselor. (*C.A., supra*, 53 Cal.4th at p. 866.) The Supreme Court held that school authorities, by the nature of their special relationship with their students, have "a duty to 'supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection,'" which "includes the duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties." (*Id.* at pp. 869-870.) The court then concluded that the school district could be liable for the negligent breach of that duty by district employees acting within the scope of their employment. (*Id.* at p. 879.) With this framework in mind, we turn to the evidence at issue here.

B.    *Background*

1.    *Motions in limine*

Prior to trial, LAUSD filed motion in limine number 1, seeking to exclude evidence of alleged bad acts by Shelburne "directed to parties other than plaintiff," and motion in limine number 5, to exclude evidence of alleged bad acts by Shelburne "unrelated to plaintiff's negligence claim." In particular, LAUSD sought exclusion of the following evidence:

(1) Comments by Shelburne to students that LAUSD claimed were "non-sexual" but otherwise inappropriate. Most notably, this included the 2009 comment Shelburne made in front of his class about the size of a student's breasts, that : "If [student] fell forward her face would not hit the ground." Several students reported this comment to Garcia at the time it was made.

(2) Shelburne's offers to give female students a ride home. LAUSD argued that several students reported such offers only after the incident with appellant on October 27, 2010. Appellant argued that the evidence was relevant to show actual or constructive notice to LAUSD; it is unclear from the record before us whether there was any evidence that anyone complained to administrators about this issue prior to October 2010.

(3) Questions from Shelburne to female students about their boyfriends and sexual experiences. Appellant proffered testimony by Rose-Manning, the assistant teacher, that she was in Shelburne's classroom in 2007 and heard him ask students about their first sexual experiences (unrelated to any educational matter), and students complained to her that the inquiry made

15

them uncomfortable. Rose-Manning also stated that she heard Shelburne make inappropriate comments to female students about having boyfriends and how they were treated by their boyfriends, and that she complained about these comments to Franklin. During the investigation into appellant's claims in 2010, B.P. told police that on October 25, 2010, Shelburne approached her and said, "You are so pretty, do you have a boyfriend? Does he treat you like the princess you are?" She said the questions made her uncomfortable.

(4) Photographs of students taken by Shelburne, which he kept on his computer and posted on his personal Facebook page, as well as Facebook friend requests sent by Shelburne to female students. It appears undisputed that Garcia first discovered these photographs on Shelburne's computer in his classroom and his district-issued laptop during the investigation in October 2010. Appellant claims that LAUSD's expert, Perondi, was shown the picture of a female student posted to Shelburne's Facebook page during Perondi's deposition. Perondi testified that the picture was "more sexual in nature than not," and that posting the picture was a violation of the LAUSD code of conduct. Appellant's counsel also stated that former principal Caldwell would testify "that he went into the darkroom at [MLHS], found inappropriate photographs and reported [Shelburne] to the school district," and that the district took "some action" in response that did not include disciplining Shelburne.

(5) Favoritism by Shelburne toward his female students. This included claims that Shelburne let his female students violate the dress code, approve their own timecards, drink in class, and store drugs in his classroom. Rose-Manning claimed she had complained about this issue to Franklin.

LAUSD argued that this evidence was irrelevant to appellant's claim, did not put the district on notice of any relevant conduct, and was prejudicial to LAUSD. Appellant opposed the motions, arguing that the evidence was highly relevant to establish that the district knew or should have known that Shelburne was likely to engage in "sexually deviant behavior" with students, and failed to protect appellant from this risk.

The court first heard argument on the motions in limine at a hearing on March 23, 2017, although the motions had not yet been fully briefed by

16

either party.  Turning to LAUSD's motion in limine number 1, the following exchange occurred:

> "The court:  Yes, they should be excluded.  I know there are a number of facts that should be excluded.  We're talking about touching -- your client has been touched.
>
> "Mr. Khehra [appellant's counsel]:  It goes to the issue of notice, your honor.
>
> "The court:  How has she been touched?  What is it, twice, or what?
>
> "Mr. Khehra: Several times, your honor.  It's . . .
>
> "The court:  Patting on the rear end or touching the breast?  What is it?
>
> "Mr. Khehra:  Rubbing his privates on her and then actually grabbing her buttocks as well.  And the issue with the other prior bad acts, this is not a classic case of character evidence or anything like that.  These bad acts go directly to the issue of notice.
>
> "The court:  Well, these other bad acts are not important as to his acts . . .  We're concerned about the touchy-feely item.  They would be excluded unless you have another reason to bring all that.
>
> "Mr. Khehra:  For notice, your honor. . . .  All of these other prior allegations and his history and his conduct as a teacher at the school, all goes to the issue of notice, that the administrators should have known what was going on with this teacher and he was unfit for his job."

The court stated it was deferring a decision but indicated it would likely exclude the evidence "other than something of touching of other students," finding that the other evidence "is a 352 problem."  The court made the same determination regarding motion in limine number five, stating that "anything that's touching, that's fine, but not other limits. 352 on that."

At the next hearing,[4] the court reiterated that it would allow evidence related to "touching or hugging" only.  The court suggested that some of the

---

[4] During this hearing, the court also denied several of appellant's motions in limine, including those seeking to exclude evidence of appellant's prior sexual relationships and prior sexual abuse against her.  In response to appellant's petition, we issued a notice of intention to grant a peremptory

other alleged acts, such as offering female students rides home, were not reported until after the incident at issue occurred. Appellant's counsel argued that the evidence helped to establish a pattern slowly escalating toward touching. The court responded: "To give someone a ride home is going to lead to touching, no. . . . 352 on that issue." Similarly, appellant's counsel argued that Shelburne's questions to female students about their boyfriends was evidence of grooming. The court responded: "This is what people ask: do you have a boyfriend, how are you doing. . . . 352. We're not getting into that, counsel."

At a subsequent hearing, LAUSD's counsel asked for clarification as to whether the court was excluding the comment Shelburne made in 2009 "about a girl falling forward -- she has large breasts. If she fell forward, she wouldn't hit her face. . . . I would assume that under the court's ruling that would be out as well." LAUSD's counsel further argued that the comment was "a bad joke, which [Shelburne] admitted to, made in class," and that Shelburne was disciplined for it. Appellant's counsel argued that it was sexual in nature and was relevant to notice because the comment led to an investigation by the district. The argument continued:

"The court: You have a 352 -- no. I'm not going to allow that.

"Mr. Carillo [Appellant's counsel]: Your honor, this is sexual harassment.

"The court: Sexual harassment when a girl is falling?

"Mr. Carillo: Yes, your honor. Mr. Shelburne was actually brought in, given a conference memo, a SCAR . . . was prepared. . . . This is pure notice evidence, your honor, because it put the district on notice the year prior to our client coming in that. . . . Mr. Shelburne . . . could have the propensity to touch kids.

"The court: No. That goes too far. Touch kids? No. That will not be allowed. . . . It's a statement he made. It doesn't show touching or notice of touching, so that will not be allowed."

---

writ of mandate on this issue. The trial court then granted appellant's motions and excluded the evidence from trial.

Later during the hearing, when appellant's counsel again argued that the evidence was admissible and "not 352, your honor, because it is sexual, because it is a sexual comment about a girl," the court queried, "A comment about a girl falling?" Appellant's counsel responded that the comment "puts the district on notice that Mr. Shelburne is engaging in unlawful and unpermitted sexual conduct." The court disagreed, stating: "No. That does not show that. It shows he made a comment -- what you would call a risque comment, but I don't know if it's risque in that situation. No. That's excluded."

2. *Effect at trial*

As a result of the court's rulings on the motions in limine, no evidence was presented at trial regarding the substance of Shelburne's 2009 comment, details regarding the SCAR prepared by Garcia as a result of that comment, or any resulting investigation.[5] However, several witnesses did refer to the comment, often in the course of discussing the portion of the 2009 complaint that involved touching.

For example, during cross-examination, Silverstein testified about receiving complaints from several students and that she followed up with the principal more than once, but could not remember the timing. When LAUSD's counsel asked her about "the nature of the allegation" made by the student, Silverstein started to explain that the complaint was about "falling on the face," but immediately afterward was cut off by LAUSD's counsel and directed to focus on "physical touching." The court reiterated, "We're talking about physical touching. That's what the case is about." LAUSD's counsel also questioned Silverstein at length about the fact that there were no written reports generated based on complaints she received about touching prior to October 2010, suggesting that the 2009 touching reports were less serious. During redirect examination, appellant's counsel asked whether Silverstein was "aware of at least one time where [a prior complaint] did

---

[5] Similarly, there was no evidence admitted at trial regarding Shelburne's alleged questions to female students about sexual experiences or having boyfriends, offering them rides home (except for appellant's testimony about Shelburne's offer to her), or taking, keeping, or posting photographs of female students.

result in documentation and a SCAR report?" Silverstein stated that she did not remember. When appellant's counsel tried to ask about additional details related to the 2009 comment, the court sustained several objections by LAUSD's counsel based on the motion in limine. Ultimately, Silverstein did not testify regarding her knowledge of Shelburne's comment in 2009 or the ensuing SCAR and investigation.

Similarly, during Tania's testimony, she stated that she could not recall whether she spoke with Garcia about Shelburne touching her prior to October 2010. When appellant's counsel attempted to refresh her recollection using exhibit 23 (Garcia's notes from 2009), the court sustained respondent's objection based on the motion in limine. After further questioning, Tania again testified that she could not recall reporting any conduct prior to October 2010.

In addition, appellant's expert, Dr. Stephens, referred in her testimony to a comment by Shelburne "that was sexual in nature" and "inappropriate" as an example of an instance where Garcia failed to appropriately report or investigate Shelburne's behavior. During cross-examination, LAUSD's counsel focused on notice to the district related to Shelburne's alleged touching of appellant, much of which Dr. Stephens agreed was only discovered in October 2010. Dr. Stephens' attempts to refer to other, prior conduct were restricted based on the rulings on the motions in limine.

In closing arguments, LAUSD's counsel argued that in all of Shelburne's years of teaching, the only notice to the district was "one complaint in 2009 about a comment only, not touching, and then the following year there was one complaint about low-back touching." He then cautioned the jury to "be careful" with respect to exhibit 23, Garcia's notes from the 2009 interview with students (redacted to remove the comment), stating that the basis of the exhibit, "which is a single verbal comment, not touching, was excluded from this trial due to lack of relevance. That's why you didn't hear what the comment was." He continued to refer to the exhibit throughout his closing argument, arguing that the comment was irrelevant and the exhibit was "innocuous." Counsel further suggested that that "not once during her direct exam did [Tania] ever say she felt unsafe in class, or did she say anything about comments."

20

C.    *Analysis*

1.    *Exclusion under Evidence Code section 352*

Appellant contends the trial court erred in excluding evidence under section 352 of all conduct by Shelburne other than touching.  As an initial matter, she argues that the evidence was relevant and therefore admissible.

"Relevant" evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (§ 210; see also, e.g., *People v. Scheid* (1997) 16 Cal.4th 1, 13–14 ["The test of relevance is whether the evidence tends "'logically, naturally, and by reasonable inference" to establish material facts,'"].)  Here, appellant asserts that the evidence at issue was relevant to prove that there was a foreseeable risk of harm to her.  We agree that at least some of the excluded evidence was relevant to this issue.

As the court in *C.A.* explained, a negligent supervision claim depends, in part, on a showing that the risk of harm was reasonably foreseeable. (*C.A., supra*, 53 Cal.4th at p. 869-870; see also *Leger v. Stockton Unified School Dist., supra,* 202 Cal.App.3d at p. 1459 ["The existence of a duty of care of a school district toward a student depends, in part, on whether the particular harm to the student is reasonably foreseeable."].)  "Foreseeability is determined in light of all the circumstances and does not require prior identical events or injuries." (*M. W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508, 518–519 (*M.W.*), citing *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 502–503.)  "'It is not necessary to prove that the very injury which occurred must have been foreseeable by the school authorities. . . .  Their negligence is established if a reasonably prudent person would foresee that injuries of the same general type would be likely to happen in the absence of [adequate] safeguards.'" (*Ibid.*; see also *Leger v. Stockton Unified School Dist., supra*, 202 Cal.App.3d at p. 1460 [harm reasonably foreseeable from threats of violence known by school authorities even where violence had yet to occur].)

In *M.W.*, for example, the court found the school district owed a duty of care to a student who was sexually assaulted by another student in a school bathroom. (*M.W., supra*, 110 Cal.App.4th at p. 511.)  The court concluded that the risk of assault was foreseeable based on (1) the district's lack of

21

supervision in the early morning when the assault occurred in a known "trouble spot," (2) the assailant's extensive prior record of discipline; and (3) the unique vulnerabilities of special education students such as the victim. (*Id*. at pp. 519-520.)

As such, to support her negligent supervision claim, appellant had to prove *both* that Shelburne posed a risk of harm to students and that the risk of harm was reasonably foreseeable, i.e., that LAUSD knew or should have known of the risk. (See *C.A., supra*, 53 Cal.4th at p. 869-870; CACI No. 426.) Evidence tending to prove either of these elements was relevant to her claim.[6] Here, the trial court appeared to conclude that the evidence related to touching was relevant to the foreseeability analysis, while any other evidence, even if sexual in nature and directed toward female students, was not. LAUSD cites no authority to support this premise, and we have found none. The arbitrary nature of this determination was evidenced by the fact that the court admitted the students' reference to touching in 2009, which all witnesses seemed to agree was comparatively minor, while excluding the sexual comment that prompted the students to complain in the first place and spurred Garcia to investigate. This allowed LAUSD to argue that the touching incident in 2009 was not serious enough to require an investigation, while preventing appellant from introducing evidence showing conduct that was investigated, simply because the latter conduct was not physical touching. Indeed, appellant was permitted to elicit expert testimony regarding types of grooming behavior that could lead to sexual abuse, but was prevented from offering evidence that Shelburne had engaged in such behavior and that the district knew or should have known about it.

LAUSD also contends that most of the excluded evidence was irrelevant to notice because it involved conduct that was not reported or discovered until October 2010. While it appears to be undisputed that the district was unaware of certain conduct prior to October 2010, such as

---

[6]As such, evidence relevant to whether Shelburne posed a risk of harm could be admissible, even if that evidence did not also demonstrate notice. Of course, the court retains the discretion to exclude such evidence under section 352 as, for example, unduly prejudicial or inflammatory. Here, because the trial court concluded any evidence other than touching was irrelevant, it did not reach this step.

Shelburne taking photographs of female students and posting them on Facebook, appellant offered witness testimony that much of the conduct was reported prior to that time. Moreover, given that the standard is what the district knew or should have known, the court's blanket exclusion of this evidence was error. For example, appellant's proffer of evidence that the district had notice of Shelburne's potentially inappropriate conduct involving photos of students while Caldwell was principal is relevant to appellant's argument that the district should have investigated and discovered Shelburne's later conduct in taking photos of female students and posting those photos in violation of school and district policies. The court's failure to consider this evidence because it was not related to physical touching was error.[7]

We do not suggest that all of the evidence proffered by appellant was improperly excluded. But because the court drew a bright line excluding all evidence of conduct other than touching, it arbitrarily excluded evidence that *was* relevant to appellant's claim.

Moreover, we find no support for any countervailing considerations under section 352 of undue prejudice, confusion, or undue consumption of time, nor did the court make any such findings on the record. Indeed, the testimony of several of the witnesses was likely more confusing *with* the evidentiary exclusions, as both witnesses and counsel struggled to discuss Shelburne's past conduct and LAUSD's knowledge without violating the court's orders. As such, we conclude that the court's order granting LAUSD's motion in limine numbers one and five was an abuse of discretion.

### 2. Prejudice

LAUSD also argues that any erroneous exclusion of evidence was harmless, because the jury heard information about the 2009 comment other than its "actual wording," and because the other evidence excluded was "non-sexual" and "seemingly innocuous" conduct by Shelburne. We disagree.

___

[7]LAUSD argued that the court did not expressly rule on Caldwell's proffered testimony regarding the discovery of photos and that appellant "made no effort to elicit this testimony" at trial. However, as LAUSD acknowledged, this testimony was squarely within the scope of the evidence excluded by the court.

We review claims of evidentiary error for prejudice applying the "'miscarriage of justice'" or "reasonably probable" harmless error standard. (See *Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 447, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.) Thus, an erroneous evidentiary ruling requires reversal only if "'there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1449

Thus, a "miscarriage of justice" warranting reversal "should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800; see also *Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1449.) "We have made clear that a 'probability' in this context does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility." (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715.)

Having examined the record, we conclude that the erroneous exclusion of evidence prejudiced appellant. We are not persuaded by LAUSD's attempts to minimize the effect of the content of Shelburne's comment in 2009– suggesting that "hearing the actual joke actually would likely have served to diminish the impact of this evidence." In contrast to the witnesses' vague assertions regarding an inappropriate comment, the comment itself involved Shelburne's crude comment on the size of a student's breasts. This comment, along with evidence regarding Shelburne's inappropriate questions to students about boyfriends and sexual experiences, all of which appellant claims the district knew about prior to October 2010, was therefore crucial to her argument that LAUSD knew or should have known of the risk that Shelburne would commit sexual abuse of a student.

Moreover, the exclusion of non-touching evidence impacted appellant's ability to offer otherwise admissible evidence of prior complaints. Several witnesses became confused when asked to discuss complaints of touching only, omitting the evidence of inappropriate comments, and were unable to

24

testify about what they had said or when. Capitalizing on this confusion, LAUSD's counsel repeatedly suggested, during cross-examination and in closing argument, that there were no complaints relevant to the case prior to October 2010. Conversely, appellant's counsel was unable to offer evidence of the one complaint—the 2009 comment—that Garcia felt was serious enough to document in a SCAR, nor could appellant question Garcia or Shelburne about that comment or whether an adequate investigation was done. As such, it was reasonably probable that the admission of this evidence would have led to a result more favorable to appellant.

## II. *Jury Instructions and Special Verdict*

Appellant contends the trial court erred in giving several form jury instructions, CACI Nos. 3701, 3703, and 426, with modifications proposed by LAUSD. She also asserts that the same errors occurred in the special verdict form used. Although we need not reach these issues in light of our reversal on the basis of the court's evidentiary rulings, we examine appellant's claims as the same issues would doubtless be raised in the event of any retrial. The propriety of jury instructions is a question of law that we review de novo. (See *Cristler v. Express Messenger Systems, Inc*. (2009) 171 Cal.App.4th 72, 82.)

We agree with appellant that CACI Nos. 3701 and 3703 were unnecessary and potentially confusing given the issues in dispute in this case. We find no error with respect to CACI No. 426 and corresponding issues on the special verdict form.

### A. *CACI Nos. 3701 and 3703*

CACI Nos. 3701, "Tort liability asserted against principal, essential factual elements," and 3703, "Legal relationship not disputed," are part of the series of instructions regarding vicarious liability. Although appellant initially requested their inclusion, she later argued that CACI No. 3701 was unnecessary as the parties did not dispute that principal Garcia, as well as Franklin and Caldwell before her, were employees of LAUSD and acting within the course and scope of their employment when engaged in the alleged negligent supervision at issue. She also objected to LAUSD's proposed version of both CACI Nos. 3701 and 3703, which inserted only Garcia as the

25

applicable agent, rather than all three administrators.  The court disagreed and accepted respondent's proposed version.

Thus, the jury was instructed using CACI No. 3701 as follows:

"[D.Z.] claims that she was harmed by Wendy Garcia's negligence.

"[D.Z.] also claims that LAUSD is responsible for the harm.

"If you find that Wendy Garcia's negligence harmed [D.Z.], then you must decide whether LAUSD is responsible for the harm. LAUSD is responsible if [D.Z.] proves both of the following:

"1. That Wendy Garcia was LAUSD's employee; and

"2. That Wendy Garcia was acting within the scope of her employment when she harmed [D.Z.]."

The jury was similarly instructed using CACI No. 3703:

"In this case Wendy Garcia was the employee of LAUSD.

"If you find that Wendy Garcia was acting within the scope of her employment when the incident occurred, then LAUSD is responsible for any harm caused by Wendy Garcia's negligence."

First, we agree with appellant that CACI Nos. 3701 and 3703 were unnecessary and potentially confusing to the jury, as it was undisputed that the administrators were acting within the course and scope of their employment with LAUSD during all relevant times.  Indeed, the special verdict did not ask the jury to make any findings on this issue.

Second, we also agree that both instructions as given did not reflect the scope of appellant's claim.  As proposed by LAUSD, the instructions used Garcia's name to replace the bracketed term "name of agent."  The use notes of both instructions state:  "The term 'name of agent,' in brackets, is intended in the general sense, to denote the person or entity whose wrongful conduct is alleged to have created the principal's liability."  Here, appellant contended that MLHS administrators, including Caldwell, Franklin, and Garcia, negligently supervised and retained Shelburne, causing her harm.  Thus, the wrongful conduct alleged should not have been limited to that committed by the administrator in place at the time of the injury (Garcia) but rather reflected the full scope of appellant's claim.  As such, it was error for the court to give these instructions as proposed by the district.  (See *Joyce v. Simi Valley Unified School District* (2003) 110 Cal.App.4th 292, 303 ["An

26

instruction correct in the abstract, may not be given where it is not supported by the evidence or is likely to mislead the jury."]; *Harris v. Oaks Shopping Center* (1999) 70 Cal.App.4th 206, 209 ["Irrelevant, confusing, incomplete or misleading instructions need not be given."].)

B. *CACI 426 and special verdict*

Appellant also argues that the court erred in giving respondent's version of CACI No. 426 as follows:

"[D.Z.] claims that she was harmed by James Shelburne and that LAUSD is responsible for that harm because LAUSD negligently supervised and/or retained James Shelburne. To establish this claim, "[D.Z.] must prove all of the following:

"1. That LAUSD hired James Shelburne;

"2. That James Shelburne posed a risk of sexual abuse towards students;

"3. That LAUSD knew or should have known that James Shelburne posed a risk of sexual abuse towards students and that this risk of sexual abuse towards students created a particular risk to others;

"4. That James Shelburne's posed risk [*sic*] of sexual abuse towards students harmed [D.Z.]; and

"5. That LAUSD's negligence in supervising and/or retaining James Shelburne was a substantial factor in causing [D.Z.]'s harm."

Appellant takes issue with the insertion of "posed a risk of sexual abuse toward students" into the second, third, and fourth element of the instruction. The model instruction reads as follows for element two: "That [name of employee] [[was/became] [unfit [or] incompetent] to perform the work for which [he/she] was hired/[specify other particular risk]]." (CACI No. 426.) Appellant argues that the instruction should have focused on whether Shelburne was unfit or incompetent as a teacher. She contends that by using the phrase "posed a risk of sexual abuse," the court "imposed a standard which required Plaintiff to show that evidence of identical prior sexual misconduct by Shelburne existed."

We are not persuaded. The language of the instruction used specifies the particular risk at issue in this case. That is consistent with the model instruction, which prompts the user to "specify other particular risk," as well

27

as the use notes, which state: "In most cases, 'unfitness' or 'incompetence' (or both) will adequately describe the particular risk that the employee represents. However, there may be cases in which neither word adequately describes the risk that the employer should have known about." It is also consistent with the case law, discussed above, holding that a claim for negligent supervision requires a showing of foreseeability of a *particular* risk of harm. (See *C.A., supra*, 53 Cal.4th at p. 869-870; *Leger v. Stockton Unified School Dist., supra,* 202 Cal.App.3d at p. 1459.) This standard is echoed in the cases cited as "sources and authority" for CACI No. 426. (See *Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 591 ["To prevail on his negligent hiring/retention claim, Lopez will be required to prove Campos was Watchtower's agent and Watchtower knew or had reason to believe Campos was likely to engage in sexual abuse."]; *Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1139 ["Negligence liability will be imposed on an employer if it 'knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes.'"].)

Nothing about the instruction deviated from the appropriate foreseeability analysis or required appellant to show Shelburne committed identical prior sexual misconduct.[8] We therefore find no error with respect to CACI No. 426 or the corresponding language in the special verdict form.

## III.  *Rebuttal witness*

Appellant also contends that the court erred when it refused to let her call a rebuttal witness to address Shelburne's claim that he could not have an erection due to the blood thinners he was taking. She argues that Shelburne made this claim for the first time at trial and she should have been able to

---

[8] We reject appellant's argument, raised largely in her reply, that LAUSD's duty to supervise its students gives rise to a "separate and distinct" claim of negligence, as distinguished from its duty to protect her by adequately supervising Shelburne. Her contention that she had alleged or shown a broader duty of care that would give rise to liability based on Shelburne's general "unfitness"—as distinct from a foreseeable risk that he would sexually abuse a student— is not supported by the record or by the applicable case law on foreseeability, discussed herein.

call a rebuttal witness to impeach this claim.  This issue is moot, given our reversal on other grounds.  We therefore need not reach it.

## DISPOSITION

The judgment is reversed and the matter is remanded for a new trial. Appellant is awarded her costs on appeal.

## CERTIFIED FOR PUBLICATION

COLLINS, J.

We concur:

WILLHITE, ACTING P.J.

CURREY, J.

29