Filed 2/25/21  Shui v. B.R. & Sons CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| CHRISTINE SHUI,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>B.R. & SONS et al.,<br><br>    Defendants and Appellants. | B299251<br><br>(Los Angeles County<br>Super. Ct. No. BC649750) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Ernest Hiroshige, Judge.  Affirmed.

        Macdonald & Cody, Scott L. Macdonald and Douglas M. Carasso for Defendants and Appellants.

        ElDabe Ritter Trial Lawyers, Jonathan M. Ritter and S. Edmond El Dabe; KP Law and Zareh Jaltorossian for Plaintiff and Respondent.

* * * * * *

The driver of a work truck clipped a passenger car on the freeway, causing it to career out of traffic and into a woman standing behind her car on the freeway's shoulder. The driver drove on. The woman sued the driver and his employer for negligence, and a jury awarded her $4 million for her pain and suffering. On appeal, the driver and employer argue that (1) the driver's conduct in "hitting and running" should have been excluded from evidence once liability was conceded, and (2) the damages are excessive. Because neither argument has merit, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *The accident(s)*

This case involves a sequence of automobile accidents that culminated in a collision that nearly cost 31-year-old Christine Shui (plaintiff) her leg.

On a rainy Sunday afternoon in November 2016, plaintiff and her husband were driving home on the 60 Freeway; the husband was driving, and plaintiff was a passenger. They were rear-ended by a car; moments later, *that* car was rear-ended. All three cars pulled over to the wide right shoulder of the freeway to exchange information.

A few minutes later, Antonio Garcia (Garcia) approached this stretch of freeway while driving a heavy work truck. Garcia drove his truck into the rear corner bumper of a Volkswagen Jetta in the lane to his right, and the impact pushed the Jetta out of traffic and toward the shoulder. The Jetta struck plaintiff, pinning her left leg between its front bumper and the rear bumper of her husband's car.

Garcia kept on driving.

**B.** *Plaintiff's injuries*

The resulting injuries to plaintiff were significant.

**1.** *Physical injuries*

The impact squeezed copious amounts of muscle, tissue, and blood out of plaintiff's thigh and onto the cars and the ground. Although surgeons were able to graft skin from her left hip (using a mechanism similar to a deli cheese slicer to harvest the skin), the discolored skin grafts did not replace the lost mass in her thigh, which is now misshapen with a concave indentation.

The impact also severed plaintiff's femoral artery. Immediately after the accident, it was "touch and go" whether the resulting loss of oxygen to her left leg might necessitate amputation of the leg. However, surgeons were able to replace the severed segment of the artery with a vein removed from plaintiff's right thigh.

Plaintiff also suffered permanent nerve damage.

Plaintiff spent 31 days in the hospital, and another few months bedridden. She underwent five surgical procedures while hospitalized, and two more after her release.

**2.** *Psychological injuries*

As a result of the accident itself, the ensuing surgeries, and the physical therapy that followed, plaintiff endured a great deal of pain. She is also humiliated by the disfigurement of her left leg. She now suffers from two psychological conditions: (1) post-traumatic stress disorder (PTSD) from the trauma of the accident and its immediate aftermath as well as from the continuing possibility (albeit less than 5 percent) that her leg may yet have to be amputated, and (2) "adjustment disorder with depressed mood." The PTSD causes plaintiff to have panic attacks and

flashbacks, and prompts her to avoid situations that "trigger" them.

## II.     Procedural Background

### A.     *Complaint*

In February 2017, plaintiff sued Garcia and his employer, B.R. & Sons, Inc. (collectively, defendants).  In the operative first amended complaint, her sole claim is for negligence.[1]

### B.     *Motion in limine regarding Garcia's conduct in leaving the scene*

Defendants filed 11 motions in limine; in one of them, defendants moved to exclude all evidence and argument that Garcia had engaged in a "hit and run"—that is, that he left the scene after causing the accident.  Because defendants stipulated to liability while this motion in limine was pending, the sole issue for trial was the extent of plaintiff's damages and hence whether the hit-and-run conduct was relevant to her damages.

Although it was undisputed that Garcia had left the scene, there were factual disputes as to whether Garcia left the scene *knowing he had caused an accident*, as to whether plaintiff *knew* Garcia had left the scene, and as to whether that knowledge had

---

1       Plaintiff initially sued defendants for intentional infliction of emotional distress based on Garcia's conduct in not stopping after causing the accident, but the trial court ultimately sustained a demurrer to that claim without leave to amend on the grounds that (1) Garcia's conduct in leaving the scene did "not constitute extreme and outrageous conduct," and (2) the resulting impact on plaintiff as alleged in the operative complaint—namely, that she "began to cry, worry and became afraid"—did not constitute "severe emotional distress."

Plaintiff's husband also sued defendants for negligent infliction of emotional distress, and settled with defendants for $400,000.

4

caused plaintiff any damages. In support of their motion in limine, defendants introduced evidence that (1) Garcia had told the California Highway Patrol (CHP) officers who interviewed him the next day that he thought he had just run over debris, and those officers had found Garcia to be credible and thus had not recommended criminal prosecution for a "hit and run"; and (2) according to plaintiff's psychologist expert, the psychological injury to plaintiff from learning that Garcia left the scene depended on her *belief* that Garcia committed a hit-and-run, and hence depended on her rejecting Garcia's view of what happened. In opposition to the motion, plaintiff introduced evidence that (1) Garcia "kept on driving" and refused to "go back" even after another motorist who witnessed the accident caught up to Garcia and gestured to him to circle back to the scene of the accident; (2) Garcia's story to the CHP was untrustworthy because Garcia's account of the accident (i.e., whether he was changing lanes and whether his defroster was on) had changed over time; (3) plaintiff testified in a deposition that she "found out there was another truck at the scene"; and (4) according to plaintiff's psychologist expert, plaintiff's "understanding that the truck driver had fled the scene" was an "aggravating factor" to her emotional distress and prevented her from "getting closure."

Following multiple rounds of briefing as well as extensive argument and re-argument, the trial court ruled that (1) the hit-and-run evidence was admissible, and (2) no evidentiary hearing pursuant to Evidence Code section 402[2] ("402 hearing") was necessary. With regard to admissibility, the court concluded that (1) the evidence as to whether Garcia knowingly committed a hit-

_____

[2]     All further statutory references are to the Evidence Code unless otherwise indicated.

and-run, whether plaintiff knew about it, and whether that knowledge exacerbated her emotional distress was "contradictory" but nonetheless "sufficient" for a jury to "conclude" that his knowing flight had aggravated her emotional distress; and (2) the CHP officers' recommendation not to prosecute Garcia for a hit-and-run did not mandate exclusion of the hit-and-run evidence under section 352 because the quantum of evidence necessary "for a criminal prosecution" is greater than the quantum necessary to create a "triable issue" for a jury "under the preponderance of the evidence standard." The court declined defendants' invitation to "ignore" plaintiff's evidence and "just believe the defense side" in evaluating the threshold question of admissibility. The court also found that holding a 402 hearing would be an "undue waste of time" because it would "end up with [the same] conflict in the evidence" set forth in the parties' papers and because it would still be the jurors' job to resolve that conflict, such that a 402 hearing would do no more than "inconvenience" "witnesses to . . . come down [to court] twice to tell their testimony."

## C. *Trial*

### 1. *Opening statements*

Plaintiff made no mention of Garcia's possible hit-and-run conduct in her opening statement to the jury. In their opening statement, defendants told the jury that plaintiff was "making a claim that the truck didn't stop at the scene and that bothers her," but that Garcia "didn't know there was an accident."

### 2. *Pertinent evidence at trial*

To support her claim for noneconomic damages, and as noted above, plaintiff introduced evidence that her physical injuries caused her great pain and humiliation. Also as noted

6

above, plaintiff called a psychologist as an expert witness who opined that plaintiff suffers from PTSD and depression, and that "most of [that] anxiety" stems from her "injury and the effects of her injury."

The jury heard conflicting evidence as to whether Garcia's conduct in leaving the accident scene exacerbated plaintiff's emotional distress. Plaintiff introduced evidence that (1) Garcia was aware he had caused an accident because (a) a motorist who saw the accident caught up to the work truck that caused the accident, gestured for the truck's driver (that is, Garcia) to turn around and go back, saw the driver look at him, and watched the driver speed away, (b) Garcia admitted to the CHP officers that he saw a motorist pull up alongside him, and (c) Garcia testified at trial that he both "knew" and "didn't know" he "had collided with another car and left the scene"; (2) plaintiff learned, as she lay on the roadside, that the motorist who caused the accident never stopped because (a) the driver of the Jetta testified that he was "standing there by [plaintiff] after the accident" when he announced that "the truck had driven away after hitting" him, and (b) plaintiff testified that she heard the Jetta's driver say that "[s]omebody else hit him" and she did not see the truck at the scene; and (3) plaintiff's knowledge that the "truck didn't stop" was an "aggravating" "trigger" for her PTSD. Defendants elicited evidence that (1) Garcia thought he only hit debris and not another vehicle, and both of the CHP officers who interviewed Garcia found his explanation to be credible and did not recommend criminal charges; and (2) plaintiff did not know about Garcia's conduct at the time of the accident because (a) her psychologist expert testified that plaintiff "didn't know . . . at the time" that Garcia had driven away, and (b) plaintiff herself

7

testified on direct examination that she did not "learn[] that the person responsible for the collision was found" until "two months after the accident" and, on cross-examination, that she did not learn until two months after the accident that the truck had left the scene.

### 3. *Pertinent jury instructions*

At the suggestion of plaintiff's counsel, the trial court instructed the jury that it could "use" "[t]he evidence you have heard regarding whether . . . Garcia 'hit and ran' from the scene of the accident knowing he struck a vehicle" "for a limited purpose"—namely, "to decide whether [plaintiff] sustained emotional distress due to this" conduct.  The court also instructed the jury that it "must not include in [its] award any damages to punish or make an example of [defendants]."

### 4. *Closing arguments*

In her initial closing argument, plaintiff argued that Garcia's conduct in leaving the scene operated as a "trigger" for her PTSD.

A few minutes later, plaintiff argued that "[f]rom the moment that B.R. & Sons found out about this accident, damage control began."  Defendants objected:  "Argument to punish."  At a sidebar, the trial court sustained the objection because plaintiff was "linking the hit-and-run to damage control" but whether "damage control began" was "beyond the scope of whether or not the hit-and-run occurred."  Defendants moved for a mistrial on the ground that plaintiffs were signaling to the jury that it should punish defendants for Garcia's hit-and-run conduct, but the trial court denied the motion:  "I didn't hear any comment about punishing anybody because there was no such comment by [plaintiff's] counsel."

8

In their closing argument, defendants asserted that plaintiff's damages demand "has everything to do with punishment." Seizing on plaintiff's testimony on cross-examination, defendants also urged that the "only evidence" at trial showed that plaintiff learned about Garcia's hit-and-run conduct two months *after* the accident.

In rebuttal, plaintiff pointed out other evidence at trial indicating that plaintiff was contemporaneously aware of Garcia's flight from the scene—namely, the Jetta driver's testimony that he reported it to everyone on the freeway shoulder and plaintiff's testimony that she heard him.

5. *The verdict*

After two days of deliberations, the jury awarded plaintiff $5,310,021 in damages. Specifically, the jury voted 12-0 to award plaintiff $1,310,021 for future medical expenses, voted 10-2 to award her $2 million for future pain and suffering, and voted 9-3 to award her $2 million for past pain and suffering.

D. *Motion for new trial*

As pertinent to this appeal, defendants moved for a new trial on the ground that the trial court erred in denying their motion in limine to exclude evidence that Garcia knowingly fled the accident scene. Defendants also mentioned in passing that the damages were excessive. After briefing and argument, the trial court denied the motion. The court ruled that it had committed "no error" in allowing the jury to consider whether Garcia had fled the scene because there was sufficient evidence to present that issue to the jury; the court went on to note that the evidence adduced at trial "that Garcia had knowledge that he was involved in an accident" ended up being "overwhelming." The court also found that "no prejudice to defendants resulted."

9

The court went on to find that "[t]he special and general damages awarded by the jury [were] fair and reasonable and within the range to be expected with the significant life-changing injuries that plaintiff sustained . . . ."

**E.** *Appeal*

Defendants filed this timely appeal.

**DISCUSSION**

Defendants argue that the trial court erred in (1) admitting evidence that Garcia had knowingly left the accident scene, and (2) concluding that the noneconomic damages award was not "excessive."

**I. Admission of Hit-and-Run Evidence**

Defendants contend that the trial court should not have admitted the hit-and-run evidence because it is (1) irrelevant, and (2) subject to exclusion under section 352. We review evidentiary rulings for an abuse of discretion. (*People v. Powell* (2018) 5 Cal.5th 921, 961.) "[A]n erroneous evidentiary ruling requires reversal only if "'there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error.'" [Citation.]" (*D.Z. v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 210, 231 (*D.Z.*).)

**A.** *No abuse of discretion*

1. *Relevance*

Evidence is relevant if it has "any tendency in reason to prove or disprove any *disputed* fact that is of consequence to the determination of the action." (§ 210, italics added.) Under this definition of relevance, it is therefore "error to receive evidence . . . material solely to" facts that are undisputed. (*Fuentes v. Tucker* (1947) 31 Cal.2d 1, 5 (*Fuentes*).) But where, as here,

10

liability is undisputed but damages are not, evidence tending to show "how an accident happened" is relevant if it is "material to the issue of damages." (*Ibid.*) More to the point here, a motorist's "failure to stop" after an accident can be relevant to show "the aggravation of injuries sustained in the accident or additional injuries incurred after it." (*Karl v. C.A. Reed Lumber Co.* (1969) 275 Cal.App.2d 358, 362; see generally *Abelson v. National Union Fire Ins. Co.* (1994) 28 Cal.App.4th 776, 789 (*Abelson*) ["Damages for emotional distress are inextricably related to the conduct causing that distress . . ."].) Applying these definitions, evidence that Garcia knowingly left the accident scene would be relevant to prove plaintiff's emotional distress damages only if (1) plaintiff knew Garcia left the scene, (2) this knowledge caused plaintiff emotional distress, and (3) Garcia knew of the accident at the time he left the scene (because, otherwise, the emotional distress plaintiff experienced would be due to her misperception rather than anything Garcia actually did).

In this case, the trial court did not abuse its discretion in ruling that evidence that Garcia left the accident scene was relevant because there was sufficient evidence for the jury to find each of the three logical prerequisites for relevance to be true: The Jetta driver told plaintiff that the car that caused the accident drove off and plaintiff testified that she heard him and did not see the responsible vehicle at the scene; plaintiff's psychologist expert testified that Garcia's hit-and-run conduct was an "aggravating" "trigger" for plaintiff's PTSD; and Garcia's conduct in ignoring the motorist who signaled him to turn back and his admissions on the stand supported a finding that Garcia did, in fact, know he struck another vehicle and drove off anyway.

11

Defendants raise what boil down to four arguments in response.

First, defendants point to several pieces of evidence that would have supported a finding that the three logical prerequisites for relevance were absent or only "weak[ly]" established. In particular, defendants assert (1) that plaintiff did not know about the hit-and-run until later because (a) both she and her psychologist expert indicated that she did not learn of the hit-and-run "until later," (b) the Jetta driver was unable to identify Garcia as the hit-and-run driver at the time, and (c) plaintiff was merely *told* Garcia drove away (rather than seeing him drive away herself); (2) that plaintiff's emotional distress was caused by her "lack of closure" due to not knowing who caused the accident, but her lack of knowledge was due to her own ignorance because the CHP officers had identified Garcia the day after the accident; and (3) that Garcia did not *knowingly* commit a hit-and-run because the CHP officers found Garcia to be credible when he disclaimed any such knowledge.

As a global matter, the trial court's task in assessing the relevance of evidence turning on preliminary facts is to determine whether there is sufficient evidence for a jury to find those preliminary facts to be true; the court's task is *not* to definitively decide those preliminary facts for itself. (§ 403, subd. (a)(1) [when assessing "relevance" of "proffered evidence," that evidence is admissible if "the court finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact"]; *People v. Cottone* (2013) 57 Cal.4th 269, 283 ["'the preliminary fact questions listed in [section 403, subdivision (a)] . . . are not finally decided by the judge because they have been traditionally regarded as jury questions'" because they "'involve the credibility

12

of testimony'"].)  Because, as noted above, plaintiff introduced evidence that would have supported a finding as to each of the three prerequisites (or, in the vernacular, preliminary facts) upon which the relevance of the hit-and-run evidence turned, section 403 required the trial court to let the jury decide those facts; the court would have erred if, as defendants now request, the court had decided those facts for itself.  This is also why the trial court did not abuse its discretion in declining to hold a section 402 evidentiary hearing—namely, because that hearing would have adduced the same conflicting evidence and thus required that evidence to be submitted *to the jury* for resolution.  (*People v. Williams* (1997) 16 Cal.4th 153, 197 [decision not to hold section 402 hearing is reviewed for an abuse of discretion]; *People v. Chavez* (2018) 22 Cal.App.5th 663, 703 [section 402 hearing unnecessary when exercising discretion under section 352]; cf. *In re Kathleen W.* (1987) 190 Cal.App.3d 68, 73 [error not to hold a section 402 hearing for matters outside section 403, subdivision (a)].)

The items of evidence defendants point to would not have mandated exclusion for additional reasons, too.  Although the testimony of both plaintiff and her psychologist expert contained some internal inconsistencies regarding *when* plaintiff learned that Garcia had not stopped, it is up to a jury to resolve those conflicts within the witnesses' testimony.  (*Pleasant Hill v. First Baptist Church* (1969) 1 Cal.App.3d 384, 408 [noting "the duty of the jury to reconcile conflicting testimony"]; *People v. Morgan* (1997) 58 Cal.App.4th 1210, 1216 [same, even as to inconsistencies within a single witness's testimony].)  Further, the Jetta driver said he told plaintiff about the truck driving away and plaintiff at one point said she heard the Jetta driver;

13

that is enough to get the question of fact to the jury. Whether the Jetta driver could identify Garcia as the hit-and-run driver moments after the accident and whether plaintiff actually *saw* Garcia driving away are not preliminary facts upon which relevance turns; their absence is therefore of no moment.[3] The psychologist expert's testimony that plaintiff's emotional distress was *also* caused by her "lack of closure" did not negate his testimony that Garcia's hit-and-run conduct was an "aggravating factor" to her PTSD. And the CHP officers' belief that Garcia was credible when Garcia disclaimed any knowledge of hitting another vehicle is entitled to no weight because one person's belief regarding another person's credibility is not usually relevant—let alone dispositive. (E.g., *People v. Zambrano* (2004) 124 Cal.App.4th 228, 239 ["a lay witness's opinion about the veracity of another person's particular statements is *inadmissible* and *irrelevant* on the issue of the statements' credibility"]; *People v. Melton* (1988) 44 Cal.3d 713, 744 [same].)

---

[3] Defendants also make a hearsay objection to plaintiff's reliance on what the Jetta driver told her about the truck driving away. This objection is without merit. What the Jetta driver told plaintiff is relevant to prove the effect of that statement on its hearer—that is, its effect on plaintiff's mental state. A statement admitted to show its effect on the hearer is not hearsay. (E.g., *Holland v. Union Pacific Railroad Co.* (2007) 154 Cal.App.4th 940, 947 [a "'statement is *not* hearsay'" when "'it is the hearer's reaction to the statement that is the *relevant* fact sought to be proved—*not* the truth of the matter asserted in the statement'"].) Although, as noted above, the relevance of this evidence turns upon a finding that Garcia had *knowingly* fled the accident scene, that finding is supported by evidence *other than* the Jetta driver's statement.

14

Second, defendants contend that the CHP officers' decision not to recommend prosecution for hit-and-run precluded reference to Garcia's underlying conduct in this case. This contention ignores the different burdens of proof in criminal and civil cases. The CHP officers' assessment that a prosecutor could not prove a hit-and-run beyond a reasonable doubt does not mean that plaintiff could not do so by a preponderance of the evidence. (See *United States v. Watts* (1997) 519 U.S. 148, 157 ["a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence"].)

Third, defendants assert that the preliminary fact that the hit-and-run affected plaintiff's psyche cannot be established because the psychologist expert's testimony was inadmissible. Because neither of defendants' two proffered bases for inadmissibility was raised before the trial court, they are forfeited. (§ 353, subd. (a).) Both bases also lack merit. Defendants claim that the expert was not competent to testify because he was not plaintiff's treating physician. This claim is frivolous, as non-treating physicians may testify as experts. (E.g., *Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 31, 35-36.) Defendants also claim that the expert impermissibly relayed to the jury what plaintiff had told him, which violates the hearsay rule under *People v. Sanchez* (2016) 63 Cal.4th 665. This claim is also frivolous, as experts may relay "case-specific facts" that are "independently proven by competent evidence" (*id.* at p. 686), and plaintiff here competently testified at trial to the statements the expert relayed to the jury.

15

Lastly, defendants assert that the trial court was wrong to rely upon *Fuentes, supra*, 31 Cal.2d 1 and *Abelson, supra*, 28 Cal.App.4th 776 because those cases are factually distinguishable. This assertion is meritless. The trial court cited those cases for the legal rule they applied; whether those cases were factually analogous is of no concern.

2. *Section 352*

Section 352 grants trial courts "discretion" to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.)

The trial court did not abuse its discretion in admitting the hit-and-run evidence under section 352. For the reasons explained above, Garcia's conduct in knowingly leaving the scene of the accident was relevant to prove—and hence had significant probative value in establishing—plaintiff's emotional distress damages. What is more, the trial court substantially mitigated any unfair prejudice by explicitly instructing the jury that it was only to consider the hit-and-run evidence "to decide whether [plaintiff] sustained emotional distress."

Defendants respond with five arguments. First, they argue that plaintiff impermissibly referred to Garcia's conduct as "criminal" and implied that defendants engaged in a "cover up." The record does not support this argument. Plaintiff's counsel never used those terms. And to the extent plaintiff implied that defendants tried to conceal Garcia's involvement, that implication was supported by Garcia's own testimony that he gave "different explanations" at "different times." Second, defendants contend

16

that plaintiff sought to "vilify and demonize" defendants and to make Garcia look like a "bad guy," which was aimed at engendering anger toward defendants.  What made Garcia look like a "bad guy" was his decision to keep driving, and section 352 does "not . . . allow for the exclusion of evidence *merely* because it is 'prejudicial' in the sense of damaging to a litigant's position." (*O'Mary v. Mitsubishi Electronics America, Inc.* (1997) 59 Cal.App.4th 563, 575.)  Third, defendants assert that plaintiff's elicitation of evidence on the hit-and-run aspect of the case was unduly time consuming and took "days" of testimony.  The record does not support this assertion, as the questions directed at the hit-and-run aspect of the case took mere minutes—not multiple days.  Fourth, defendants argue that the court's limiting instruction was ineffective, but this argument is purely speculative and runs contrary to the longstanding presumption that "the jury follows its instructions."  (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 803.)  Fifth, defendants urge that plaintiff would have been able to prove her case without the hit-and-run evidence.  However, section 352 does not provide for the exclusion of a portion of a party's case merely because the party could obtain a lesser recovery based on what was still admitted; if it did, section 352 would mandate the exclusion of wide swaths of evidence.  This most certainly is not the law.

**B.** *No prejudice*

Even if we assume that the trial court abused its discretion in admitting evidence of Garcia's hit-and-run conduct as part of plaintiff's emotional distress damages, there is no reasonable probability that the admission of this evidence altered the result of the trial.  (*D.Z.*, *supra*, 35 Cal.App.5th at p. 231.)

17

Defendants bear the burden of establishing prejudice (*Vaughn v. Jonas* (1948) 31 Cal.2d 586, 601), and to satisfy that burden, they point to the size of the $4 million noneconomic damages award and urge that the hit-and-run evidence was a "major" part of the trial and the "entire foundation" of the $4 million award. The record does not support defendants' position. As we conclude below, the size of the $4 million award is not excessive on its face and defendants offer no evidence as to how the hit-and-run evidence affected that verdict.[4] Further, the hit-and-run evidence occupied a minor role at the trial and was accurately characterized by plaintiff as merely an aggravating factor to the emotional distress that was chiefly attributable to the crash itself. Indeed, the hit-and-run evidence had a slightly elevated profile at trial only because *defendants* repeatedly brought up that evidence: *Defendants* were the first to raise the issue during opening statements; *defendants* were the first to elicit testimony (from the CHP officer) on the issue; and *defendants* devoted a substantial portion of their closing argument to the issue. In other words, defendants are complaining about a prejudicial effect that, if it exists at all, is one that they themselves created.

## II.     Excessive Damages

Defendants argue that the trial court erred in denying their new trial motion because the $4 million award for past and future noneconomic damages is excessive.

---

[4]     Before the trial court, defense counsel submitted a declaration stating that the "jury would have awarded a lower verdict amount if evidence and argument on the issue of 'hit and run' had been properly excluded," but the trial court correctly struck that statement as speculative.

18

A trial court may grant a new trial when the jury's award of "damages" is "[e]xcessive." (Code Civ. Proc., § 657, subd. (5).) For these purposes, a damages award is "excessive" only when it is "'so grossly disproportionate'" as to "'raise[] a presumption that it was the result of passion and prejudice'" because it "shocks the conscience." (*Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 508-509 (*Seffert*); *Daggett v. Atchison, T & S.F.R. Co.* (1957) 48 Cal.2d 655, 666 (*Daggett*).) Because a finding that a particular damages award is excessive is akin to a finding that there is not enough evidence to support that award (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1055), we review a trial court's finding that a damages award is not excessive for substantial evidence and, in so doing, view the record in the light most favorable to that finding. (*Rony v. Costa* (2012) 210 Cal.App.4th 746, 753-754; *Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 720.)

Although defendants arguably forfeited their right to challenge the excessiveness of the damage award by making no more than a passing reference to it in their motion for new trial, their challenge lacks merit in any event because substantial evidence supports the trial court's finding that the $4 million noneconomic damages award does not "shock the conscience." Whether a noneconomic damages award of this size for a significant injury that risked—and still risks—the loss of a limb is closer to the infield or to the outfield wall, the award is still well within the proverbial ballpark. Defendants have also not provided any evidence indicating that the jury's assessment of damages was corrupted.

Defendants respond with two arguments.

19

First, they contend that the $4 million award for noneconomic damages is out of whack with the awards for noneconomic damages in other cases involving crushed limbs. Although courts sometimes "consider amounts awarded in similar cases" when evaluating the excessiveness of an award (*Daggett*, *supra*, 48 Cal.2d at p. 666), doing so is of limited utility because "such awards vary greatly" and "each case must be decided on its own facts and circumstances" (*Seffert*, *supra*, 56 Cal.2d at p. 508). This is especially true for awards of noneconomic damages because "[i]njuries are seldom identical and the amount of pain and suffering involved in similar physical injuries varies widely." (*Ibid.*; *Fernandez v. Jimenez* (2019) 40 Cal.App.5th 482, 490-491 (*Fernandez*).) Defendants point to several cases where the noneconomic damages award was substantially less than the $4 million award in this case; plaintiff cites cases where the award was substantially more (e.g., *Cobb v. Cty. of L.A.* (2019) 2019 Cal.App.Unpub.LEXIS 3084, *3-*6 [award of $9.8 million for past and future noneconomic damages due to crushed foot and leg]). If anything, this exercise in comparison confirms that the award in this case is within—and not beyond—the pale.

Second, defendants suggest that plaintiff's closing argument inflamed the jury by referencing "Lady Justice" and the Bible's "eye for an eye" maxim, and accusing defendants of engaging in "damage control." To be sure, a damages award may be excessive if traced to "improper argument by counsel that would suggest the jury relied upon improper considerations." (*Fernandez*, *supra*, 40 Cal.App.5th at p. 490.) But plaintiff's closing argument was not improper. Plaintiff's counsel mentioned the "statue . . . of Lady Justice" in the courtroom, but

20

to explain how the scales she holds "represent[] weighing evidence" and how the sword she holds represents "the power to see those decisions through."  Plaintiff's counsel mentioned the Bible's "old system" of seeing "an eye for an eye," but to explain how "society changed" and how we "now . . . use money to compensate for the justice."  And while plaintiff's counsel mentioned "damage control," he did not link it to punishing defendants; indeed, it was *defendants* who first mentioned punishment in their objection and in their responsive closing argument.  What is more, the trial court specifically instructed the jury that the attorneys' arguments were not evidence and that the jury was not to consider punishment in assessing damages.  Indeed, the $4 million noneconomic damages award is closer to the $1 million to $1.5 million range suggested by defendants than to the $30 million sought by plaintiffs.  This tends to negate the inference that the jury got "carried away" by plaintiff's arguments.

## DISPOSITION

The judgment is affirmed.  Plaintiff is entitled to her costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

CHAVEZ